**UNITED STATES, Appellee,**

v.

**Royce A. ROBINSON, Specialist Four, U.S. Army, Appellant.**

No. 38,722.
CM 438276.

U. S. Court of Military Appeals.

June 22, 1981.

For Appellee: *Captain Richard P. Laverdure* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Captain Rolland S. Roup* (on brief); *Major John T. Meixell, Captain Harry J. Gruchala, Captain Kenneth J. Allen.*

*Opinion of the Court*

EVERETT, Chief Judge:

The appellant was tried at Kaiserslautern, Germany, by a general court-martial composed of officers and enlisted men. Contrary to his pleas, he was found guilty of two specifications charging that he had violated Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934, by wrongfully selling and wrongfully possessing .05 grams of heroin. Appellant's sentence to dishonorable discharge, confinement at hard labor for 3 years, total forfeitures, and reduction to the grade of Private E–1 was approved by the convening authority. After the United States Army Court of Military Review on January 31, 1980 affirmed the approved findings and sentence, this Court granted (9 M.J. 120) the appellant's petition for review on these two issues:

I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT IN FAILING TO GIVE THE INSTRUCTION ON THE APPELLANT'S SPECIFIC TRAIT FOR TRUTHFULNESS, WHERE IT WAS RAISED BY THE EVIDENCE.

II

THE APPELLANT WAS SUBSTANTIALLY PREJUDICED BY THE FAILURE OF THE STAFF JUDGE ADVOCATE TO SERVE A COPY OF THE POST–TRIAL REVIEW ON HIS INDIVIDUAL CIVILIAN COUNSEL.

For Appellant: *Captain Robert L. Gallaway* (argued); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John F. Lymburner, Major Charles A. Byler* (on brief).

I

At appellant's trial, Private First Class Ricky S. Tipton testified that he had been working as a confidential informant for the Criminal Investigation Division (CID) drug suppression team. In that connection he

had arranged a drug buy which took place at the accused's room in the barracks. Although Tipton had been accompanied to the barracks by another person, he was alone in appellant's room when he paid Robinson $60.00 for the heroin.

Appellant testified in his own defense that, although Tipton had come to his room, no drug sale had taken place. Appellant's girl friend gave testimony to the same effect. Also, appellant called several witnesses who presented evidence that, although Tipton had a reputation as a drug dealer and was not reliable, appellant had no reputation as a drug user or dealer and was truthful and of good general character. The Government offered no rebuttal evidence.

Prior to argument on the findings, the military judge conferred with counsel on the proposed instructions in an Article 39(a) session. Neither the Government nor the defense objected to the instructions which the judge proposed to give. The defense counsel requested a single instruction, which concerned matters that the military judge had already planned to cover in his proposed instructions concerning informants and credibility.

In his argument trial counsel urged that, even though Tipton had a somewhat dubious past, "his testimony [was] certainly more believable than the combined testimony of both the accused and the accused's girlfriend who both of them have very good motives to lie." In turn, the defense counsel contended that Tipton had a motive to falsify.

In his instructions the military judge pointed out that Tipton was an "informant," and so his testimony "should be scrutinized with particular care." Thereafter, the judge instructed generally about the circumstances to be considered in determining the credibility of witnesses. In this regard, he stated:

In determining the weight and value to be given to the testimony that you have heard you should carefully scrutinize the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief. Consider each witnesses [sic] intelligence, the accuracy, and retentiveness of his memory, the acuteness of his powers of observation, his appearance and deportment, his friendships, prejudices, and associations, *his character as to truth and veracity.*

(Emphasis supplied). The judge continued with a litany of other factors for the members to consider in evaluating the testimony given by the witnesses. Next he gave a general instruction on the evidence of good character which had been introduced by the appellant to show the probability of his innocence; and he advised that "[t]he law recognizes that a person of good character is not as likely to commit an offense as is a person of bad character" and that "evidence of the accused's good character may be more than sufficient to cause a reasonable doubt to remain as to his guilt, thereby warranting acquittal." When the judge had completed his instructions, he inquired whether counsel desired additional instructions or had any objection to those that had been given. He received a negative response from both sides.

Appellate defense counsel now contend that the military judge on his own initiative should have gone further and instructed the court members specifically that the evidence of appellant's good character as to truth and veracity should be considered in evaluating his testimony. The Government argues to the contrary that no instruction was required since, in its view, the evidence as to the appellant's good character for truthfulness should never have been admitted in the first place.

■ We cannot subscribe to the government's position. Whether or not the Government could have excluded such evidence by objecting thereto when it was offered, the evidence was received without objection. Thus, it was before the court members for their consideration. Since it is well-established that a witness' truthful character tends to show that his sworn testimony at a trial is truthful, *see* paras. 138*f*

(2), 153*b*(2)(a), Manual for Courts-Martial, United States, 1969, (Revised edition), the judge could properly have instructed to this effect. Indeed, since the central issue of the trial was whether appellant or Tipton was testifying truthfully, the military judge would have erred—whether or not prejudicially—had he failed to instruct on this subject after a defense request that he do so.

▮ However, the absence of a defense request for an instruction on the significance of evidence as to his character for veracity is fatal to his claim of error. Long ago this Court decided that a judge is under no obligation to instruct on evidence as to an accused's good character unless such an instruction is requested by the defense.[1] *United States v. Johnson*, 3 U.S.C.M.A. 709, 14 C.M.R. 127 (1954); *United States v. Schumacher*, 2 U.S.C.M.A. 134, 7 C.M.R. 10 (1953). If this be true as to evidence of general good character—which is sufficient to create reasonable doubt as to an accused's guilt—there can be no question that the judge is under no duty to instruct on evidence concerning the accused's character for truthfulness unless there is a request that he do so.

▮ Moreover, the military judge did advise the court members to consider evidence of a witness' character for truthfulness in determining the weight of his testimony. This instruction obviated any danger that the members might ignore appellant's reputation for truthfulness in deciding whether to believe him or Tipton.

## II

When the court originally convened for an Article 39(a) session, trial counsel recited the absence of "Captain Byron J. Braun, who was detailed as defense counsel." The military judge then ascertained that appellant would be defended by civilian counsel, Mr. Louis Sepe. After receiving an explanation of his rights to have military counsel provided, Robinson stated that he wished to be defended by Mr. Sepe and did not "want

anybody in addition to" him. His civilian counsel represented appellant throughout the trial; and Captain Braun, the appointed military defense counsel, was never present.

On May 16, 1979, the record of trial was authenticated by the military judge. On the authentication page a line had been prepared for Mr. Sepe's signature to attest that he had examined the record of trial; but no signature appears thereon. The staff judge advocate's review, dated June 13, 1979, is accompanied by a certificate that "a copy of an authenticated record of trial, and the Staff Judge Advocate's review, were served on the defense counsel on 13 June 1979." This certificate is signed by an enlisted member of the staff judge advocate's office; and on a copy, reproduced as Appendix A to this opinion, Captain Braun marked a block to indicate that he had "no comments to make ... [concerning] either the record of trial or the Staff Judge Advocate's review." Captain Braun did not indicate the date when he signed.

Between the page of the trial record which contains the court's sentence and the adjournment, and the authentication page, there appears a "Memorandum for Record" concerning this accused, signed by Sergeant First Class James L. McNair, who was the noncommissioned officer in charge of the Criminal Law Division of the office of the Staff Judge Advocate. It recites:

> On 18 June 1979 at 1525 hours, Mr. Louis Sepe, the civilian Defense Counsel for the above mentioned service member, contacted me, SFC James L. McNair, at my office by telephone, and asked that the detailed Defense counsel, CPT Brian J. Braun, be given this record of trial for examination and all future post trial work.

In view of the dates involved, there is an obvious basis for inferring that the staff judge advocate—or at least someone in his office—served his review and the record of trial on the wrong lawyer. Obviously, this error would be especially prejudicial to appellant's rights to file a response to the

---

1. Fortunately, the occasion for such requests is removed by the general practice of military judges to instruct *sua sponte* on evidence of an accused's good character.

review, since Captain Braun, on whom the review was served on June 13, had not participated at all in the trial. Moreover, up to that point there was no showing that Braun had ever established an attorney-client relationship with appellant. *Cf. United States v. Iverson,* 5 M.J. 440 (C.M.A. 1978).

Affidavits subsequently submitted to the Court of Military Review provide this information:

 (A) (Appellant's affidavit, dated September 19, 1979):

 On 13 April 1979 my civilian lawyer, Mr. Louis Sepe, informed me of my rights to appellate review of my court martial conviction. At that time I signed a request for appellate review. Neither at that time nor at any other time did we discuss his post trial counsel responsibilities. He did not voice a desire to be relieved of those responsibilities. I did not request, nor did I authorize CPT Byron J. Brown [sic], nor any other person other than Mr. Sepe to handle those post trial counsel responsibilities. At no time did CPT Brown [sic] or Mr. Sepe discuss with me the post trial review of the Staff Judge Advocate or the manner in which it would be handled. As far as I knew Mr. Sepe would remain my lawyer up until the Convening Authority took final action on my court martial findings.

 (B) (Captain Braun's affidavit, dated October 24, 1979):

 To my best recollection, I never personally talked with SP4 Robinson because he had retained civilian counsel, and I was informed that my assistance would not be required.

 I did not at any time help perfect the defense case for Royce Robinson, nor was any request made by the accused or civilian counsel for my help.

 At no time did I discuss with SP4 Robinson any matters dealing with post-trial responsibilities.

 The record of trial was served on myself on 13 June 1979. I reviewed the record of trial and the SJA Post-Trial review to the best of my recollection on 14 June 1979. I did not personally talk with Mr. Sepe in regards to this delegation, but assumed the task because I had been detailed originally to the case.

 (C) (Mr. Sepe's affidavit, dated November 7, 1979):

 At no time did I consider CPT Braun as my co-counsel. I did not utilize his support or expertise in preparing for trial.

 To the best of my recollection, I did not discuss post-trial duties with SP4 Robinson. I do not recall discussing SJA Review. I did discuss the fact that SP4 Robinson would be entitled to an automatic appeal since a punitive discharge was adjudged.

 I was never served with a copy of the Record of Trial or Post-Trial Review. I do not recall delegating to CPT Braun the task of studying the Post-Trial Review by the SJA or the Record of Trial. I do not doubt the truthfulness of SFC McNair's statement. It is possible that someone in my office told SFC McNair that CPT Braun could review the Record of Trial; however I do not recall doing so. Our office 'Message Sheet' indicates that SFC McNair did, in fact, call my office on 15 June 1979 and 18 June 1979, with regard to SP4 Robinson. My records indicate that I was not in the office the entire day of 18 June 1979.

 (D) (Sergeant First Class McNair's affidavit, dated November 9, 1979):

 On 13 June 1979, after Specialist Calulot served CPT Braun the record of trial and post-trial review, CPT Braun indicated that he was the Detailed Defense Attorney, however, since Mr. Sepe was requested as civilian counsel, he had not participated in the Robinson trial. We made arrangements to serve the record of trial and post-trial review on Mr. Sepe. A call to his office in regards to the post-trial work of Specialist Robinson was made. Mr. Sepe returned the inquiry on 18 June 1979.

This is why CPT Braun was served on 13 June 1979. I was contacted by Mr. Sepe on 18 June 1979 and also informed CPT Braun and four days went past before action was taken. CPT Braun did not actually work the post-trial review until on or after 18 June 1979. Such a delay would not be permitted.

Yes, mailing records of trial is not the best method of insuring that the record gets to the civilian attorneys within Europe in a timely manner. Mr. Sepe's office was contacted by me personally on several occasions as to where Mr. Sepe could be reached within a particular week. During this period, I was going to give him a copy of the record of trial for examination. On 17 May 1979, he was supposed to be at an air base northeast of Kaiserslautern. A courier from this office tried to meet Mr. Sepe but could not make contact.

Mr. Sepe did not initiate contact with this office. To the best of my memory, he gave no instructions except that the record of trial was to be served on CPT Braun along with the post-trial review.

The affidavits leave many questions unanswered. The trial took place at Kaiserslautern, where apparently the staff judge advocate had his office. Mr. Sepe's office was in Frankfurt—not a great distance away. However, neither the record of trial nor the staff judge advocate's review were delivered to Sepe's office by mail, courier, or otherwise. Instead, according to Sergeant First Class McNair, on May 17, 1979 —the very day after the military judge had authenticated the record of trial—a courier from the staff judge advocate's office had tried to meet Mr. Sepe at an air base northeast of Kaiserslautern in order to give him a copy of the record of trial for examination, but the courier could not make contact.

At that time the personnel in the staff judge advocate's office were well aware that Sepe was the attorney who should examine the record of trial. Therefore, he would be the logical recipient of the review. Thus, it is unclear why on June 13 the staff judge advocate served the review on Captain Braun. Equally mystifying is why Braun—to the best of his recollection on June 14—proceeded to review the record and the post-trial review. Adding to the confusion is the statement by Sergeant McNair that Captain Braun actually performed the review "on or after" June 18.

 The relationship of trial defense counsel to an accused normally continues through the preparation of the staff judge advocate's review and the response thereto. *United States v. Palenius*, 2 M.J. 86 (C.M.A. 1977). Accordingly, under ordinary circumstances, the review should be served on the lawyer who represented the accused at trial—rather than on some other attorney.[2] *United States v. Iverson, supra.* "The relationship between an attorney and client is personal and privileged." *United States v. Miller*, 7 U.S.C.M.A. 23, 28, 21 C.M.R. 149, 154 (1956). Although Captain Braun had been detailed to represent appellant at his trial, clearly no attorney-client relationship was ever established between them. Thus, the service on Braun cannot excuse the failure to serve Mr. Sepe with the staff judge advocate's review. *United States v. Iverson, supra.*

Of course, the record does not reveal the existence of a situation like that in *United States v. Jeanbaptiste*, 5 M.J. 374 (C.M.A. 1978), where an assistant defense counsel had been detailed after trial for the purpose of submitting the response to the staff judge advocate's review. There the trial defense counsel had been temporarily reassigned from Fort Hood, Texas—the place of the trial—to West Point, New York; and, after being contacted by telephone, he had informed assistant defense counsel that he

2. Typically, when civilian counsel appears in a court-martial, he functions as lead counsel and, therefore, should be served with the review. However, where the military defense counsel, too, has participated during the trial and has been served with the review, we have assumed—absent clear indication to the contrary—that this occurred with civilian counsel's consent. *United States v. Jeanbaptiste*, 5 M.J. 374, 377 n.4 (C.M.A.1978).

did not desire to submit matters in rebuttal. Here Mr. Sepe—the only lawyer who represented appellant at his trial—was still practicing law in a nearby city; and there is no showing that Captain Braun solicited his comments on the post-trial review.

█ The affidavits do not satisfactorily explain the sequence of events. However, they do make clear that this is not a situation where two counsel representing a client have allocated work between themselves. Instead, only Mr. Sepe was representing the accused; and, according to all accounts, including Sergeant McNair's affidavit, Captain Braun was not representing appellant at the time he was served with the staff judge advocate's review and declined to submit any rebuttal thereto. Indeed, Robinson never accepted Captain Braun's representation. Moreover, this case is not one where one lawyer who is representing a client then retains another lawyer or a paralegal—whether with or without the client's consent—to perform legal research, prepare a brief, or do some other tasks. In such instances, the final work product bears the stamp of the lawyer who purports to represent the client and who, in the client's eyes, bears the responsibility for the outcome. Sepe, the appellant's *only* lawyer, never asked Captain Braun to prepare any document for submission by Mr. Sepe. For all practical purposes, Captain Braun was only an interloper, who had no familiarity with the case and who, without consulting either appellant or the lawyer who tried the case, waived appellant's right to rebut the staff judge advocate's view. *See United States v. Iverson, supra.* Therefore, we must conclude that here appellant was deprived of his post-trial rights under *United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

█ The proliferation of problems involving service of the staff judge advocate's review on the wrong attorney has reduced the anticipated benefits to be derived from the response procedure prescribed in *Goode.* However, rather than retreat from *Goode*

itself, we prefer now to suggest some procedures which may reduce the problems. First, in a case where more than one defense counsel has appeared, the military judge should seek at the conclusion of the trial to establish on the record which lawyer will have the primary responsibility for preparing the *Goode* response. Secondly, where a civilian counsel is involved, it is appropriate for the judge to discuss with him in open court the post-trial responsibilities to which he will be subject under *Goode* unless specifically released therefrom by the accused. Third, if more than one military defense counsel appears at trial, the staff judge advocate—if the allocation of post-trial responsibilities is not already manifest from the record—should determine which counsel is to prepare the *Goode* response and should reflect in his review or otherwise the basis for service on any attorney other than the appointed defense counsel. If, for whatever reason, the staff judge advocate cannot determine which defense counsel is to be chiefly responsible for post-trial defense functions, then he should serve a copy of his review on all defense counsel.

### III

For failure to serve the staff judge advocate's review on the proper defense counsel, the usual remedy is to direct a new review and convening authority action. In view of the lapse of time, we are unaware whether Mr. Sepe is still available to provide a *Goode* response. That fact can be ascertained by the staff judge advocate who prepares the new review. If Mr. Sepe is unavailable to respond to the staff judge advocate's review within a reasonable time, then service of the review should be made upon appellant at his last address of record and upon appellate defense counsel,[3] who can assist in finding local military counsel to prepare the *Goode* response or, if Robinson requests, can prepare the response themselves. Of course, after submission of the response or providing reasonable oppor-

---

**3.** Because of their familiarity with the case, appellate defense counsel are in a better position to prepare the response than any other lawyer except Mr. Sepe.

tunity for its submission, the convening authority may act.

### IV

Accordingly, the decision of the United States Army Court of Military Review is reversed. The action of the convening authority is set aside. The record is returned to the Judge Advocate General of the Army for submission to a convening authority for a new review and action after compliance with the procedures set out in this opinion.

### Appendix

DEPARTMENT OF THE ARMY

HEADQUARTERS, 21ST SUPPORT COMMAND

Office of the Staff Judge Advocate

APO New York 09325

AERJA–C

SUBJECT: US v. ROBINSON

### I

1. In accordance with *US v. Goode*, 1 MJ 3 (CMA 1975) and *US v. Cruz-Rijos*, 1 MJ 429 (CMA 1976) a copy of the post-trial review and authenticated copy of the record of trial in the above-named case is attached for your consideration.

2. If you have any rebuttal, comments, corrections, or other matters you wish to be considered by the Convening Authority before he takes action, request you submit those in writing to the Staff Judge Advocate, 21st Support Command (Panzer Kaserne, Kaiserslautern, Germany), ATTN: AERJA–C, APO New York 09325, within five days of the service date shown in part II below.

### II

I certify that a copy of an authenticated record of trial, and the Staff Judge Advocate's review, were served on the defense counsel on <u>13 June 1979</u>.

/s/ SPJ Shiela E. Calulot

### III

I hereby acknowledge receipt of a copy of the post-trial review and an authenticated copy of the record of trial in the above-named case. I understand that I have an opportunity to rebut, correct, or challenge any matter I deem erroneous, inadequate, or misleading, or to comment on any other matter. I also understand that my comments must be delivered to the Staff Judge Advocate, 21st Support Command, APO New York 09325, at Panzer Kaserne, Kaiserslautern, Germany, within five days of this service for them to be considered by the Convening Authority.

I have no comments to make on either the record of trial or the Staff Judge Advocate's review.

I have reviewed the record of trial and the Staff Judge Advocate's review and my comments are attached.

/s/ Byron J. Braun
BYRON J. BRAUN
CPT, JAGC
Defense Counsel

FLETCHER, Judge (concurring in part):

The record does not support a finding that Mr. Sepe, civilian defense counsel, made a proper delegation of his post-trial responsibilities to Captain Braun. *See United States v. Jeanbaptiste*, 5 M.J. 374, 378 (C.M.A.1978) (Fletcher, C. J., dissenting). In view of the disposition ordered by Chief Judge Everett in this case, which I join, Issue I should not be addressed at the present time. *See United States v. Brooks*, 6 M.J. 249 (C.M.A.1979), subsequent petition denied, 9 M.J. 17 (C.M.A.1980).

COOK, Judge (concurring in part and dissenting in part):

I agree with the disposition of the instructional issue in Part I of Chief Judge Everett's opinion, but I am impelled by the law and the record before us to dissent from the remainder of the opinion because the issue is not substitution of counsel but the delegation of responsibility to another lawyer.

Elsewhere, I set out my reservations as to imposition upon civilian counsel of the duty to represent an accused during review of the record of his conviction, absent evidence that counsel is obligated to do so under his retainer with the accused.[1] However, the Court has consistently assumed,[2] in the absence of evidence to the contrary, that a civilian lawyer representing an accused at trial remains his counsel after trial, for the purpose of receiving service of, and responding to, the staff judge advocate's post-trial review, as provided by the *Goode* rule.[3]

Here, in his affidavit, civilian counsel does not expressly admit his awareness of his responsibility in respect to the post-trial review. However, he declares, unequivocally, that he does "not doubt the truthfulness of SFC McNair's statement."

McNair's memorandum for the record demonstrates that Attorney Sepe, civilian counsel, knew that, as trial defense counsel, he had to receive, and respond to, the staff judge advocate's review. The memorandum, which Sergeant McNair later stated, "with full certainty," set forth "exactly what took place," attests that when Captain Braun, the detailed defense counsel, was served with the staff judge advocate's review, he indicated he had not participated in the trial. As a result, arrangements were made to serve Attorney Sepe, but these failed. Several attempts to reach Mr. Sepe by telephone also failed. However, on June 18 *Mr. Sepe telephoned* McNair. He instructed McNair to give the record of trial to Captain Braun for the "post-trial work."

In his own affidavit, Attorney Sepe does not deny that the conversation with Sergeant McNair took place. He says only: "I do not recall delegating to CPT Braun the task of studying the Post-Trial Review by the SJA or the Record of Trial." The Court of Military Review evaluated the affidavits, and the other documentary matters submitted to it, and concluded they demonstrated that Attorney Sepe "advised . . . [the Government, in the person of Sergeant McNair who was the noncommissioned officer in charge of the staff judge advocate's office] to make service on the detailed counsel" for accomplishment of the *Goode* review. In my opinion, the evidence compellingly supports the findings of fact by the Court of Military Review, and, therefore, the findings are binding upon this Court. *United States v. Little*, 1 M.J. 476 (C.M.A. 1976).

Having concluded that Attorney Sepe had requested Captain Braun to do the necessary "post-trial work," the Court of Military Review observed that "[i]t is not uncommon for attorneys to share or delegate responsibilities in a given case." Indeed, the practice of obtaining assistance from another lawyer for accomplishment of particular aspects of litigation, without the prior knowledge or consent of the client, is not only commonplace, but judicially sanctioned, when the arrangement does not burden the client beyond his retainer. As stated in *Corpus Juris Secundum*, the rule is that, subject to "this limitation" of not increasing the financial obligation of the client, a retained attorney is "at liberty to employ as many assistants in a case as he chooses." In general terms, when retained counsel is unable to attend personally to the needs of his clients, he may "properly arrange with another competent lawyer to do what is necessary to protect the immediate interests of his clients during any period of absence or incapacity." 7A C.J.S. Attorney and Client § 217. Sergeant McNair's memorandum demonstrates that Attorney Sepe perceived himself to be in that situation, and, therefore, concluded that, notwithstanding Captain Braun had not previously participated in the case, the Captain could

---

1. *See* Cook, *Courts-Martial: The Third System in American Criminal Law*, So.Ill.L.J. 1 (1978). *See also United States v. Palenius*, 2 M.J. 86 (C.M.A.1977).

2. *United States v. Ray*, 6 M.J. 60 (C.M.A.1978); *United States v. Davis*, 5 M.J. 451 (C.M.A.

1978); *United States v. Jeanbaptiste*, 5 M.J. 374 (C.M.A.1978).

3. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

discharge the defense responsibilities during the post-trial proceedings. Consequently, he delegated those responsibilities to Captain Braun. That delegation served to protect "the immediate interests of" the accused because it assured that the defense reply to the staff judge advocate's review would be submitted to the convening authority before he was likely to act on the

case.[4] There was, therefore, no substitution of counsel and no concomitant need to obtain accused's consent to Captain Braun's examination of, and response to, the staff judge advocate's review.

As I agree with the Court of Military Review's analysis of what transpired in the post-trial proceedings, I would affirm its decision.

**4.** Under *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), the expiration of more than 90 days between the imposition of post-conviction restraint upon an accused and the convening authority's action gave rise to a rebuttable presumption that the delay was prejudicial to the accused. The rule has since been terminated by *United States v. Banks*, 7 M.J. 92 (C.M.A.1979). However, it was in effect at the time of these proceedings, and it exerted a strong influence upon a convening authority to act within the 90-day period to lessen the likelihood of a defense challenge to the timeliness of his action. *See* my separate opinion in *United States v. Iverson*, 5 M.J. 440, 447–48 (C.M.A.1978).