UNITED STATES, Appellee,

v.

Larry D. YARBOROUGH, Specialist
Four, U.S. Army, Appellant.

No. 45,329.

CM 442223.

U.S. Court of Military Appeals.

Sept. 10, 1984.

For Appellant: *Captain William T. Wilson* (argued); *Colonel William G. Eckhardt, Major Robert C. Rhodes, Captain Paul J. Moriarty* (on brief); *Captain Warren G. Foote.*

For Appellee: *Captain Patrick M. Flachs* (argued); *Lieutenant Colonel John T. Edwards, Captain John L. Plotkin* (on brief).

### Opinion of the Court

EVERETT, Chief Judge:

A general court-martial at Fort Hood, Texas, tried Yarborough on charges of burglary and indecent assault, in violation of Articles 129 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 929 and 934, respectively. He was convicted of unlawful entry, in violation of Article 134, as well as indecent assault, and sentenced to a bad-conduct discharge, confinement for 2 years, total forfeitures, and reduction to pay grade of Private E-1. The convening authority approved the findings and sentence; and the United States Army Court of Military Review affirmed. 14 M.J. 968 (1982). Thereupon, this Court granted review to consider whether the military judge should have permitted the defense to litigate the admissibility of a pretrial statement and whether the military judge's instructions were adequate with respect to certain character evidence. 15 M.J. 332 (1983).

I

Early in the morning of October 11, 1981, Private Sonya Matthes, who had returned from a party off post, was sleeping in her barracks. Her room—room 320—was located on the third floor in the female wing of the barracks. The door was closed and "locked by a key lock." However, Matthes was "not positive" if "it was latched" and, unless latched, it was "possible to bang" the door "and have it open." She was awakened from her slumber by Yarborough, who was putting his hand down inside her panties and penetrating her private parts with his finger.

Matthes "leaned up and I pushed him away and I told him to get out of the room.... He then covered my mouth up and told me to be quiet. That I'd draw attention .... I then pushed him away again and told him once again to get out. And then he stood up and said, 'Fine, be that way,' and left." Thereafter, Matthes "just sat on my bed in fright and began to cry and then fell asleep." The next morning she got up around 9:30–10:00 a.m. and, "still frightened and scared," she went over to the room of her friend, PFC Mangana, talked to her, decided to report the incident, and then reported it to the Staff Duty Officer. Matthes saw Yarborough in the hallway that morning; "I was upset and I started saying stuff to him"—although Matthes was "not ... sure what ... [she] said."

Sergeant Willien Slone, who lived in room 323 across the hall from Private Matthes and two doors down, had seen Yarborough in the area sometime between 3:00 a.m. and 5:00 a.m. on October 11. In fact, Yarborough had knocked on Slone's door, but when she did not open it, he left. PFC Anna Contreras had also seen Yarborough in the hallway in the early morning hours of October 11, 1981. He had been knocking on two occasions on the door of

Private Williams, a female soldier who lived in room 324.

The first defense witness was Captain Mark Preston, who had known Yarborough for over a year and a half. When it appeared that the defense proposed to ask this witness his opinion about Yarborough's "honesty and character for truthfulness," assistant trial counsel objected that "[h]onesty is not an issue in this case"; and the judge sustained the objection. At the request of defense counsel, Captain Preston was "temporarily excused" subject to recall.

Next, Yarborough took the stand and testified that on October 11 at some time between 3:30 and 4:00 a.m. he had been in the female wing of the barracks. Twice he had gone to the water fountain, and then he had knocked on Sergeant Slone's door in an effort to "get acquainted with her, you know, talk to her." Also he had knocked on the door of Private Williams because he "wanted, you know, just to talk to somebody. You know, that's my, you know, my nature. I'm a very talkative person, you know, at times." However, he denied that he had entered the room of Private Matthes at any time. According to him, he previously had been involved in a confrontation with Matthes when he asked her for a cigarette, and they "had a big argument." Around 10:30 a.m. on the morning of October 11, he was asleep when Privates Matthes and Mangana had banged on his door. By the time he dressed and opened the door, they were gone; so he "went around to the corner to the CQ deck." Matthes came down the hall "yelling, ... 'You nigger, you black nigger,' you know, 'I'm going to burn you now, nigger.'"

On cross-examination, Yarborough admitted that on the prior evening he had attended a battalion party. He had not been "looking for ... male company" when he went into the female wing of the barracks and knocked on two doors; but he was "just looking for somebody to talk to." He had not known why Matthes was so upset when she yelled at him later on the morning of October 11. According to Yar-

borough, he could remember everything he had done the night before, and there was no "gap in" his memory.

Trial counsel asked, "Do you remember talking to Sergeant Gooch about this?" Thereupon, defense counsel objected and "request[ed] a brief side-bar conference." Without comment, the judge immediately overruled the objection. Thereafter, Yarborough specifically denied that he "told Sergeant Gooch ... 'I don't remember anything that happened last night.'" Instead, he told Gooch the allegations against him were "false."

After Yarborough testified, his counsel requested a side-bar conference, but instead the judge asked the court members to withdraw. Defense counsel then stated that she believed Yarborough's "credibility ... is now an issue," and she "request[ed] a ruling" as to whether she could "recall Captain Preston and the other witnesses listed as defense witnesses to testify as to his honesty and truthfulness." Trial counsel objected that the cross-examination of Yarborough had not placed his character for truthfulness in issue. After defense counsel reaffirmed that her only purpose in calling Captain Preston and three noncommissioned officers as witnesses was to offer their opinion about Yarborough's character for truthfulness, the judge ruled in favor of the defense.

Captain Preston, having been recalled, testified that appellant had been honest with him and he had "never known him to lie to me." The other witnesses also testified to Yarborough's good character for truthfulness. Thereupon, the defense rested.

Staff Sergeant Ernest Gooch was called as a rebuttal witness, and when he was asked by the trial counsel whether Yarborough had made "any statements to" him, the defense objected that the statement might have been obtained without warning Yarborough of his rights. Thereupon, this discussion took place:

MJ: But, there was no motion to suppress.

DC: Sir, there was no notice of intent to use Sergeant Gooch as a witness.

TC: Your Honor, it appears on the disclosure.

MJ: Well, have it marked as an appellate exhibit.

This exhibit (appellate exhibit VI) is a document headed Disclosure of Section III Evidence and signed by trial counsel. It recites that "[p]ursuant to Section III of the Military Rules of Evidence the Defense is ... notified" that "the relevant oral and written statements by the accused ... presently known to the trial counsel are" listed thereon. The third of five statements referred to is one allegedly made by Yarborough to Staff Sergeant "Gooch the day following the alleged incident which include: 'I don't remember anything except being in the female wing of the hallway.'" The disclosure had been served on the defense on January 11, 1982—a week before trial.

After defense counsel conceded that she had a copy of this document and trial counsel affirmed his intention "to limit" himself "to the scope of" the "disclosure," the judge overruled the objection. Thereupon, defense counsel remarked, "I also received the verbal assurances of the trial counsel that Sergeant Gooch would not be called as a witness." The military judge then stated once again, "The objection is overruled," and the questioning of Sergeant Gooch continued. According to Gooch, Yarborough made statements to him "for a brief time in the hallway" on the morning of October 11. "He said he had been a [sic] party the night before and that he had drank—been drinking quite heavily and that he did not remember going into a female's room that night."

On cross-examination by defense counsel, Gooch said that he had been present when Private Matthes told Yarborough that "she's gonna get even with him on account what she did last night—what he did last night and called him a 'nigger,' and said

that—that she was gonna jam him for it." She also said "that she was going to burn him." Gooch testified that Yarborough appeared surprised at her allegations. Yarborough told Gooch that "he remembered coming to the billets but he didn't remember going out to her room." Then, "he said that he did not go to the room" of Private Matthes. "He said he did not recall going down the hallway and going into her room."

In response to questions by the judge, Gooch testified that Yarborough "told me that he'd been to a party that evening and was drinking real heavily and he don't remember going down to—into the female's wing—into the female's room."

There being no further evidence from the parties, Private Matthes, the alleged victim, was recalled by the court. To questions from the members, she responded that, although she and Yarborough lived in the same barracks building, they had no duty relationship and did not associate among the same group of friends. Before October 11, Yarborough had never "made any sexual advances or suggestions to" her. Sergeant Slone, upon being recalled, testified that in her opinion Yarborough had been intoxicated, because earlier "[a]t the party he was acting like he was drunk maybe. And we was coming down the hall, he was weaving."

In an Article 39(a), 10 U.S.C. § 839(a) [1] session on proposed instructions, defense counsel stated that she did not "want ... [the military judge] to instruct on voluntary intoxication"; and she added that "the only instruction" she wanted "would be credibility of witnesses, character evidence." The judge then responded that "the credibility of witnesses instructions includes a phrase that among other things they should consider the character for truth and veracity"; and he inquired if that was what defense counsel had in mind. Referring to a form instruction on page 7–24,[2] she replied that she wished the mem-

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

2. Apparently, defense counsel was referring to a form instruction in the Military Judges' Benchbook (DA Pam 27–9). However, we have been

bers to be advised that "to show the probability of his or her innocence, the defense has produced evidence of the accused's character for truthfulness." The judge responded: "[T]hat's the credibility instruction. That'll get included there but not separately as another instruction." When defense counsel then asked whether "there will be an instruction as far as the evidence from Captain Preston, NCO supervisors," the judge answered in the negative and explained that in his instruction concerning the credibility of witnesses he would direct the court members to

> consider also each witness' friendships and prejudices, the relationship each witness may have with either side, how each witness might be effected [sic] by the verdict, *consider also each witness' character for truthfulness* and the extent to which, if at all, each witness is either supported or contradicted by other evidence.

(Emphasis added.)

Referring again to a form instruction on page 7–24, defense counsel requested once more that the judge instruct "that the defense has produced evidence of the accused's character for truthfulness," but the judge denied this request.

After final arguments, the judge instructed the members—as he had planned—that they should "[c]onsider also each witness' character for truthfulness in [sic] the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case." Moreover, he advised them that the rules for evaluating the testimony of witnesses "apply equally to the testimony which was given by the accused." After deliberating for less than an hour, the members returned their findings.

II

 Mil.R.Evid. 304, which concerns confessions and admissions, requires that "[p]rior to arraignment, the prosecution shall disclose to the defense the contents of all statements, oral or written, made by the accused that are relevant to the case, known to the trial counsel, and within the control of the armed forces." Mil.R.Evid. 304(d)(1). Appellate Exhibit VI makes clear that trial counsel complied with this requirement.

In turn, the defense is required by Mil.R. Evid. 304(d)(2)(A) to move to suppress a contested statement "prior to submission of a plea"; and "[i]n the absence of such motion or objection, the defense may not raise the issue at a later time except as permitted by the military judge for good cause shown," the failure to so move or object constituting a waiver. Defense counsel failed to comply with this requirement; but, after her objection had been overruled on this ground, she sought to excuse the failure by stating that trial counsel had informed her that Sergeant Gooch would not be called as a witness. This objection was overruled by the judge without asking for a comment or explanation by trial counsel.

While we believe that the judge should have made some inquiry of trial counsel to assure that there had been no bad faith on the Government's part, we are satisfied that Yarborough was not prejudiced by this omission. In the first place, we note that Sergeant Gooch was not called during presentation of the Government's case-in-chief. Instead, he was offered by the Government as a rebuttal witness, after Yarborough had denied on cross-examination having stated to Gooch that he did not remember being in the female wing of the barracks. Even if, as defense counsel stated, she had been told by the trial counsel that the Government did not intend to call Sergeant Gooch as a witness, she could not reasonably assume that this assurance extended to more than the Government's case-in-chief. In short, Yarborough had not been granted a license to testify falsely on cross-examination without fear of contradiction

unable to locate a form instruction in the benchbook in use at the time which connects an accused's character for truthfulness with his innocence, so we still are uncertain about the precise language she had in mind.

by rebuttal evidence; so, if defense counsel wished to contest the statement, she should have so indicated by a motion to suppress prior to entry of pleas.

Because we perceive no bad faith by the Government and no ineffective assistance of counsel in this instance in the failure of defense counsel to object, we conclude that the military judge did not abuse his discretion by failing to investigate the admissibility of the pretrial statement at this late stage of the trial. Furthermore, from our examination of the record, we doubt that the admission of this evidence affected the outcome in any way damaging to Yarborough. Thus, Issue I is resolved adversely to the accused.

### III

In *United States v. Robinson*, 11 M.J. 218 (C.M.A. 1981), appellant introduced evidence about his character for truth and veracity. We held that, because "the central issue of the trial was whether" Robinson or a prosecution witness "was testifying truthfully, the military judge would have erred—whether or not prejudicially— had he failed to instruct on this subject after a defense request that he do so." *Id.* at 221. However, in the absence there of such a request, we concluded that the judge was under no duty to instruct.

In the present case, defense counsel's request for an instruction was confusing. She mentioned at one point that she wished an instruction about the evidence of Yarborough's "character for truthfulness" which she said had been adduced "to show the probability of his ... innocence." However, this evidence had been offered and received only as to Yarborough's credibility. Thus, unlike other types of character evidence—which would demonstrate that an accused could not have perpetrated an offense—this character evidence only tended to prove that his testimony had been true.[3]

3. Defense counsel's reference to the form instruction did not clarify the situation very much, because, so far as we can determine, this

Of course, in light of Yarborough's denial from the witness stand of having been present in Private Matthes' room, as a practical matter in this case he could not have been found guilty if he was telling the truth. Nevertheless, in legal principle, character evidence as to truthfulness—unlike other types of character evidence— does not bear *directly* on guilt or innocence unless it is, in a particular case, a "pertinent trait" (*see* Mil.R.Evid. 404(a)(1)), say, in a prosecution for false official statement (*see* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 181–82 (1981)). *Compare* Mil.R. Evid. 404(a)(1) *with* Mil.R.Evid. 608(a).

Appellate government counsel notes that the judge's instruction on the credibility of witnesses directed the members to consider each witness' character for truthfulness. Since the judge also advised that this instruction "appl[ied] equally to" Yarborough's testimony and since the only evidence as to character for truthfulness related to Yarborough, the Government contends that the members were adequately informed about the proper use of the character evidence.

Apparently in *Robinson* a similar general instruction on credibility of witnesses was not viewed as adequate to inform the court members how to use an accused's evidence of his truthful character. In any event, we believe that, upon proper request, Yarborough was entitled to a more specific instruction about the significance of the testimony by his four character witnesses. Nonetheless, when we consider the ambiguous nature of the defense request for an instruction, *Robinson* does not require reversal. Furthermore, from our consideration of the instruction given on credibility of witnesses and the other events of the trial, we conclude that Yarborough was not prejudiced by the absence of a more specific instruction about his character evidence.

instruction does not recognize the unique nature of defense evidence that an accused is a truthful person.

## IV

The decision of the United States Army Court of Military Review is affirmed.

Senior Judge COOK concurs.

FLETCHER, Judge (concurring in the result):

Chief Judge Everett, the author of the majority opinion in *United States v. Robinson*, 11 M.J. 218, 220–21 (C.M.A. 1981), stated in that opinion:

> Since it is well-established that a witness' truthful character tends to show that his sworn testimony at a trial is truthful [citations omitted], the judge could properly have instructed to this effect. Indeed, since the central issue of the trial was whether appellant or Tipton [the prosecution witness] was testifying truthfully, the military judge would have erred—whether or not prejudicially—had he failed to instruct on this subject after a defense request that he do so.

In the present case, the Chief Judge makes the following statement:

> Of course, in light of Yarborough's denial from the witness stand of having been present in Private Matthes' room, as a practical matter in this case he could not have been found guilty if he was telling the truth.

I think this goes to the central issue at trial.

Immediately following the sentence last quoted, the Chief Judge makes this observation:

> Nevertheless, in legal principle, character evidence as to truthfulness—unlike other types of character evidence—does not bear *directly* on guilt or innocence unless it is, in a particular case, a "pertinent trait" (*see* Mil.R.Evid. 404(a)(1)), say, in a prosecution for false official statement (*see* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 181–82 (1981)). *Compare* Mil.R.Evid. 404(a)(1) *with* Mil.R. Evid. 608(a).

18 M.J. 452, 457.

I am not sure how the last two quoted statements relate to each other, since they would seem to stand in contradiction one to the other; nevertheless, I agree with the former and disagree with the latter.

In *Robinson*, the Chief Judge concluded that the trial judge did not err because the trial defense attorney did not request an instruction. In the present case there can be little doubt that the defense attorney requested an instruction and to what point the instruction was addressed. Chief Judge Everett, to be consistent with his opinion in *United States v. Robinson, supra*, as to this point of law, should hold that the judge should have given the requested instruction.

I concur in the result because I believe that a defendant stands in the same stead as any other witness. Under my thinking, the defendant is fully covered by the general credibility instruction.