474

UNITED STATES, Appellee,

v.

Luiz F. DAMATTA–OLIVERA, Staff
Sergeant U.S. Army, Appellant.

No. 68,226.
CMR No. 8901421.

U.S. Court of Military Appeals.

Argued June 1, 1993.
Decided Sept. 20, 1993.

For Appellant: *Captain Roy H. Hewitt* (argued); *Colonel Malcolm H. Squires, Jr.* and *Major Fran W. Walterhouse* (on brief); *Lieutenant Colonel James H. Weise* and *Captain Timothy M. Lawlor*.

For Appellee: *Captain David G. Tobin* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Donna L. Barlett, Captain John P. Sanders* (on brief); *Major Timothy W. Lucas*.

## Opinion of the Court

WISS, Judge.

In March and April 1989, appellant was tried by a general court-martial composed of officer and enlisted members at Schofield Barracks, Hawaii. Contrary to his pleas, he was found guilty of conspiracy, larceny, and purchase of stolen property, in violation of Articles 81, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 921, and 934, respectively. Appellant was sentenced to a bad-conduct discharge and reduction to Private E–1. The convening authority approved the sentence. The Court of Military Review affirmed these results in an unpublished opinion on May 21, 1992.

This Court granted review of the following issue:[1]

> WHETHER THE MILITARY JUDGE ERRED IN REFUSING TO INSTRUCT THE MEMBERS AS TO THE CHIEF GOVERNMENT WITNESS' PRIOR INCONSISTENT STATEMENT.

We hold that the military judge did not abuse his discretion by denying the defense-requested instruction. The military judge permitted the members to consider the witness' prior statement and sufficiently instructed the members regarding the credibility of witnesses, which permitted them to decide the significance of the witness' prior statement on his credibility.

1. The Court also granted review of the issue which was resolved adversely to appellant in *United States v. Weiss*, 36 MJ 224 (CMA 1992),

## I. BACKGROUND

Appellant was implicated in a conspiracy and crime spree involving larceny of money, credit cards, checks, and personal property, and purchasing merchandise at retail stores with the proceeds from these thefts. Appellant asserted his innocence and denied involvement in these offenses.

Private Alston, a co-conspirator, was the principal government witness against appellant. Testifying under a grant of immunity, Alston stated that he and appellant met on the morning of August 10, 1988, at a 7–Eleven convenience store where they agreed to go to the gym at Tripler Army Hospital to steal money and other items from the lockers there. Pursuant to this plan, Alston and appellant, later that morning about 1100, went to the hospital and used bolt cutters to break into lockers at the gym. With the credit cards stolen from the gym, they fraudulently purchased merchandise at various civilian retail stores.

On direct examination, Alston testified that he and appellant met at the 7–Eleven store sometime between 0745 and 0900. However on cross-examination, Alston admitted that, in a prior statement made to the Criminal Investigation Command (CID) on September 12, 1988, he had stated that he met appellant at the 7–Eleven at approximately 0745 in the morning. While acknowledging his prior statement, Alston refused to testify that he and appellant met at 0745 and repeated his assertion that this meeting was between 0745 and 0900. Alston's explanation for his testimony at trial was, "I've been running over these things in my mind for the last few months, sir."

The defense challenged Alston's recollection of his rendezvous time with appellant at the 7–Eleven because the defense was able to establish through the testimony of appellant and three other defense witnesses that appellant was engaged in physical training that morning until approximately 0830. Appellant asserted that Alston's lie

*cert. granted,* —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993).

about the time of the meeting at the 7–Eleven indicated that Alston was lying about appellant's involvement in these offenses.

Attempting to orchestrate this dimension of the evidence and to focus the members' attention on it, defense counsel at the conclusion of the evidence "request[ed] an instruction on prior inconsistent statements." [2] The standard instruction on prior inconsistent statements informs the members that a witness made a statement prior to trial that is inconsistent with his testimony at trial. When giving the instruction, the military judge summarizes the inconsistency and advises the members that they may consider the inconsistency when evaluating the believability of the testimony. The members are told not to consider the prior statement as evidence of the truth of the matters contained in that prior statement.

To support his request for this instruction, defense counsel explained: "Specifically, Private Alston testified that he met Staff Sergeant Damatta at the Pearl City 7–Eleven, any time from 0745 to 0900. During cross-examination, it was brought out that he made a statement back in September of 1988 that stated that he met Staff Sergeant Damatta there at approximately 0745."

The military judge refused to give the requested instruction. He initially explained:

> The whole purpose of this instruction is to ensure that the members do not use the prior inconsistent statement as evidence of the truth of the matters contained in the statement. I don't think there's any conceivable chance of that. I think that the instruction would merely serve to confuse rather than to clarify....

When defense counsel replied that the instruction went to the credibility of the witness, the military judge stated:

You can argue that. My point here is that the fundamental purpose of the instruction is not in question. There's nothing in this case that requires the instruction in order to avoid the danger the instruction is designed to foreclose. All that instruction would do would be to enlist me on your side; have me help you to make your argument. You're fully capable of doing that for yourself.

\*     \*     \*

You know, you're perfectly at liberty to argue that this casts doubt on his believability and I'm sure you, you know, you'll do a good job. You don't need me to help you.

In fact during his closing argument, defense counsel challenged Alston's trial testimony that he allegedly met appellant between 0745 and 0900. He specifically invited the members to consider Alston's original statement wherein he "pinpointed that time at 7:45." He argued that Alston was a liar and had "trouble being consistent with his lies."

The military judge instructed the members that Alston was an alleged accomplice of appellant, that "accomplice [testimony] must be regarded with caution," and that "the uncorroborated testimony of an accomplice" is insufficient to support a conviction "if the testimony is self-contradictory, uncertain, or improbable." Additionally, the judge instructed the members regarding their exclusive responsibility to determine the "believability" of the witnesses and, in so doing, that they must consider among other things "the extent to which a witness is supported or contradicted by other evidence...." Finally, the judge instructed the members that, "if there's a discrepancy in the testimony of a witness," the members should consider whether it was "an inadvertent misstatement or delib-

---

**2.** Trial defense counsel did not proffer to the judge a defense-drafted and tailored instruction. Appellant asserts that defense counsel requested the instruction as described in paragraph 7–11,

Military Judges' Benchbook at 7–17 (Dept. of the Army Pamphlet 27–9 (1982)). However, there is no specific reference to this instruction in the record.

erate lie." The members found appellant guilty of all charges and specifications.[3]

## II. DISCUSSION

■■■ In the trial process, the finder of fact has the duty to search for truth and to determine the credibility of the witnesses. To assist in these functions, cross-examination serves a distinctive and vital role to test the evidence.[4] However, "[c]ross-examination often depends for its effectiveness on the ability of counsel to punch holes in a witness' testimony at just the right time, in just the right way." *Perry v. Leeke*, 488 U.S. 272, 282, 109 S.Ct. 594, 601, 102 L.Ed.2d 624 (1989).[5]

■■■ Impeachment of a witness during cross-examination with a prior inconsistent statement is a tool of a skillful questioner and is recognized as a basic rule of evidence to challenge the credibility of a witness. *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). *See*

Mil.R.Evid. 613, Manual for Courts–Martial, United States, 1984.[6] *See also* Mil. R.Evid. 801(d)(1)(A). The rationale for the rule is to permit the examiner to use a prior statement of a witness either to expose the liar or to refresh the recollection of an honest but forgetful witness. Fed. R.Evid. 613, Commentary, J. Weinstein & M. Berger, 3 *Weinstein's Evidence* ¶ 613[02] at 613–10.

■■■ The impeachment power of a prior-inconsistent-statement rule of evidence arises from the conflict between a witness' statements. *See United States v. Hale*, *supra*. Wigmore develops more fully the importance of this element of inconsistency:

[T]here must of course be a real *inconsistency* between the two assertions of the witness. The purpose is to induce the tribunal to discard the one statement because the witness had also made another statement which cannot at the

---

3. Following appellant's conviction, Alston wrote the convening authority a letter asserting that trial counsel had directed him to testify falsely regarding the time he met appellant at the 7–Eleven store. Trial counsel denied this allegation in her affidavit. This allegation was thoroughly investigated in a hearing under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), where trial counsel reiterated her denial of any such instruction to Alston. Both the military judge and the Court of Military Review found this allegation to be without merit.

4. *See, e.g.*, 5 Wigmore, *Evidence* § 1367 at 32 (Chadbourn rev. 1974) (calling cross-examination "the greatest legal engine ever invented for the discovery of truth"); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 800[01] at 800–12 (1988) (cross-examination, "a 'vital feature' of the Anglo–American system, . . . sheds light on the witness' perception, memory and narration[,]'" and "can expose inconsistencies, incompletenesses, and inaccuracies in his testimony").

5. F.Wellman, *The Art of Cross Examination* (1904), and J. Munkman, *The Technique of Advocacy* (1951), are widely recognized, outstanding books on cross-examination. More recent resources include: I. Goldstein & F. Lane, *Goldstein Trial Techniques* (3d ed. 1969); F. Bailey, *Cross–Examination in Criminal Trials* (1978); R. Keeton, *Trial Tactics and Methods* (2d ed. 1973); S. Schweitzer, *Cyclopedia of Trial Practice* (2d ed. 1969).

6. This rule provides:

> **Rule 613. Prior statements of witnesses**
> (a) *Examining witness concerning prior statement.* In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.
> (b) *Extrinsic evidence of prior inconsistent statement of witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Mil.R.Evid. 801(d)(2).

The federal and the military rules have omitted the word "inconsistent" from both the caption and the text of subsection (a). *Compare* Fed. R.Evid. 613, Commentary, J. Weinstein, *supra*, ¶ 613[01] n. 1 ("No significance should be attached to this difference."), *with* the Drafters' Analysis to Mil.R.Evid. 613, Manual for Courts–Martial, United States, 1984 at A22–44 (Change 2) ("The effect of that omission, if any, is unclear."). The import of the omitted word "inconsistent" is not raised in the present case.

same time be true. Thus, it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required.

Such is the possible variety of statement that it is often difficult to determine whether this inconsistency exists. But it must appear "prima facie" before the impeaching declaration can be introduced. As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done.

3A Wigmore, *Evidence* § 1040 at 1048 (Chadbourn rev. 1970). Although an inconsistency is logically essential for this method of impeachment, whether testimony is inconsistent with a prior statement is not limited to diametrically opposed answers but may be found as well in evasive answers, inability to recall, silence, or changes of position. *United States v. Dennis*, 625 F.2d 782 (8th Cir.1980); *United States v. Rodgers*, 549 F.2d 490 (8th Cir. 1976). The military judge has considerable discretion to determine if trial testimony is inconsistent with earlier assertions and to determine both admissibility and use of prior statements. *Id.*[7]

In the present case, defense counsel challenged Alston's direct testimony regarding his meeting with appellant at the 7–Eleven between 0745 and 0900 by confronting Alston on cross-examination with his prior statement to CID that addressed this matter. Defense counsel elicited Alston's concession that he had stated in his initial statement that he met appellant at approximately 7:45 in the morning, and he argued that the variation in these two statements was a conflict in the time when appellant and Alston allegedly met at the 7–Eleven store. Appreciating the arguable inconsistency between Alston's two statements, the military judge permitted appellant to present this evidence to the members and to argue this asserted inconsistency. Therefore, we do not have here a situation where the members were not allowed to consider the allegedly inconsistent evidence. *Cf. United States v. Williams*, 668 F.2d 1064 (9th Cir.1982) (prejudicial error where jury not permitted to consider evidence of prior inconsistent statement).

█ However, here appellant argued that he was entitled not only to present this evidence but also to have the judge adopt his view of it—that the statements were indeed inconsistent. Appellant asserted that the military judge was required to give an instruction to the members that Alston was impeached with his prior statement to CID.

█ While counsel may request specific instructions from the military judge, the judge has substantial discretionary power in deciding on the instructions to give. *United States v. Smith*, 34 MJ 200 (CMA 1992); RCM 920(c), Discussion. The test to determine if denial of a requested instruction constitutes error is whether (1) the charge is correct; (2) "it is not substantially covered in the main charge"; and (3) "it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation." *United States v. Winborn*, 14 USCMA 277, 282, 34 CMR 57, 62 (1963). We review the military judge's refusal to give the defense-requested instruction on prior inconsistent statements under an abuse-of-discretion standard of review. *United States v. Dennis*, 625 F.2d 782 (8th Cir.1980); *United States v. Rodgers*, 549 F.2d 490 (8th Cir.1976). Applying this three-part test here, we conclude that the military judge's refusal to give the requested instruction was not error. *See, e.g., United States v. Thompson*, 576 F.2d 784 (9th Cir.1978); *United States v. Katz*, 535 F.2d 593 (10th Cir.1976); *United States v. Bailey*, 451 F.2d 181 (3d Cir.1971).

First, the requested instruction was not entirely correct, as Alston's trial testimony

---

**7.** Inconsistent statements may be admissible as substantive evidence under Mil.R.Evid. 801(d)(1)(A) or limited to use for impeachment under Mil.R.Evid. 613.

was only arguably inconsistent with his initial statement to CID. Alston's trial testimony could be equally viewed simply as clarification of his earlier statement. There is nothing in Alston's initial statement to necessarily "induce the tribunal to discard" his trial testimony. *See* 3A Wigmore, *Evidence* § 1040 at 1048 (Chadbourn rev. 1970). In fact, the initial statement and his trial testimony both could be true. Considering that Alston's statements were subject to different constructions, appellant's proposed instruction that would have labeled the statements as inconsistent cannot be considered entirely correct.

Second, the issue of Alston's credibility was adequately addressed in other instructions by the military judge.[8] The military judge instructed the members to view accomplice testimony with suspicion and to consider carefully any discrepancies in testimony and self-contradictions [to consider "the extent to which a witness is supported or contradicted by other evidence."]. He specifically instructed the members to consider a discrepancy in the testimony of a witness and whether it was "an inadvertent misstatement or deliberate lie." Finally, the military judge instructed the members on the defense of alibi and addressed Alston's testimony as to the time he met appellant at the 7–Eleven store.[9]

Third, these instructions presented to the members an adequate legal foundation to evaluate properly Alston's testimony. The military judge permitted the members to consider Alston's two statements regarding the time of his meeting with appellant and instructed them to determine whether the witness had been impeached and, if so, its impact on the credibility of any testimony. Additionally, counsel was afforded the opportunity in both cross-examination of Alston and in closing argument to explore the purported inconsistency. We do not see how the military judge's refusal to give the requested instruction impaired the presentation of the defense or otherwise prejudiced appellant's case.

■■■ In summary, our conclusion here is consistent with the longstanding rule that the military judge should not give undue emphasis to any evidence favoring one party. *See, e.g., United States v. Bellamy,* 15 USCMA 617, 36 CMR 115 (1966); *United States v. Andis,* 2 USCMA 364, 8 CMR 164 (1953). Generally, a judge's comment on the evidence is a matter within the judge's sound discretion. *Id.* Under the circumstances of this case, the judge correctly avoided taking a partisan view of the evidence. Therefore, we cannot say that the military judge abused his discretion in refusing to give the requested defense instruction on prior inconsistent statements.

The decision of the United States Army Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, and GIERKE concur.

SULLIVAN, Chief Judge (concurring in the result):

I agree with the result reached by the majority opinion. However, I write separately only to state my reservations as to the majority's conclusion that denial of ap-

---

**8.** Although appellant concedes that the military judge's instructions indicated that accomplice testimony should be considered with caution and that conflicting statements should be examined for reliability, appellant objects that no instruction "identifies a specific inconsistent statement nor explains that such inconsistent statement may impact on the reliability of the in-court testimony of" PVT Alston. Final Brief at 14. Appellant's reliance on *United States v. Winborn,* 14 USCMA 277, 34 CMR 57 (1963), is misplaced. In *Winborn,* the law officer declined to give a requested accomplice instruction; in the present case, the military judge gave this accomplice instruction, and the evidence in

the present case did not require a separate instruction on prior inconsistent statements.

**9.** Appellant asserts that the change in Alston's testimony was significant because appellant had raised a defense of alibi based on the fact that he was at his unit from 0630 to approximately 0830 and could not have met Alston at the 7–Eleven at 0745. Appellant overstates his alibi defense. While he did proffer an alibi regarding his presence at his unit between 0630 and 0830, the alleged offenses were committed later—sometime after 1100—when appellant did not have or present a corroborated alibi defense.

pellant's requested instruction constituted no error. Private (PVT) Alston's prior statement made to agents of the Criminal Investigation Command was received at trial without objection by the Government. It was introduced by defense counsel during cross-examination of PVT Alston. Since the prior statement was not made under oath, *see* Mil.R.Evid. 801(d)(1), Manual for Courts–Martial, United States, 1984, its admission was only authorized by Mil.R.Evid. 613. See 37 MJ at 478 n. 7. As such, the military judge could have given a limiting instruction on the use of prior inconsistent statements, leaving the question of inconsistency for the members. *See* para. 7–11, Military Judges' Benchbook at 7–17 (Dept. of the Army Pamphlet 27–9 (1982)) ("(may be) or (is) inconsistent"); Mil.R.Evid. 105. "[I]t was before the Court members for their consideration [and] ... the judge could properly have instructed" on the matter at issue. *United States v. Robinson,* 11 MJ 218, 220–21 (CMA 1981). In any event, the second and third prongs of the majority opinion's test are no more than a test for prejudice. *Cf. United States v. Yarborough,* 18 MJ 452, 457 (CMA 1984). For the reasons stated in that opinion, I agree that any error was harmless.