# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.R. MCFARLANE, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**KEVIN C. CORCORAN**
**HOSPITALMAN (E-3), U.S. NAVY**

**NMCCA 201400074**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 23 October 2013.
**Military Judge**: CAPT Robert B. Blazewick, JAGC, USN.
**Convening Authority**: Commander, Navy Region Southeast, Naval Air Station, Jacksonville, FL.
**Staff Judge Advocate's Recommendation**: CDR N.O. Evans, JAGC, USN.
**For Appellant**: LT Carrie E. Theis, JAGC, USN.
**For Appellee**: Capt Cory A. Carver, USMC.

**23 December 2014**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

BRUBAKER, Judge:

At a general court-martial, a military judge found the appellant guilty, contrary to his pleas, of two specifications of sexual assault in violation of Article 120(b), Uniform Code of Military Justice, 10 U.S.C. § 920(b). The military judge sentenced the appellant to confinement for a period of two years, reduction to pay grade E-1, forfeiture of all pay and

allowances, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant now raises seven assignments of error:

(1) the military judge created a fatal variance when he changed the theory of liability for Article 120(b) in his special findings;

(2) the appellant lacked notice of the alternative theory of liability for Article 120(b) on which the military judge predicated his findings of guilty;

(3) the military judge erred when he foreclosed the defense from impeaching the complaining witness's credibility through a prior inconsistent statement;

(4) Specification 2 of the Charge is legally and factually insufficient;

(5) the military judge erred when he relied on the purported ways of the world and human experience to reconcile the complaining witness's blood alcohol content (BAC) with the testimony of witnesses;

(6) the element under Article 120(b) of "incapable of consenting to the sexual act due to impairment by alcohol" is unconstitutionally vague; and,

(7) the appellant's trial was tainted by unlawful command influence.

After carefully considering the record of trial and the submissions of the parties, we find that no error materially prejudicial to substantial rights of the appellant occurred.  We therefore affirm the findings and the approved sentence.  Arts. 59(a) and 66(c), UCMJ.

**Background**

On 22 October 2012 in Guantanamo Bay, Cuba, then-Hospitalman Apprentice BNS, the appellant, and three other Sailors proceeded from their barracks to one of the beaches on base.  While at the beach, BNS drank three to four cups of vodka and orange juice brought by the appellant.  The drinks were mixed in a 16-ounce Solo cup; the vodka was not measured and BNS described the drinks as strong.

2

At around 1550, the group arrived back at the barracks. BNS returned to her room and tried to call her husband, but was not able to because she was too drunk and could not push the correct buttons on the phone. She attempted to take a shower, "fumbling" and "dropping stuff"[1] while she did, and then lay down in bed. At around 1630, the appellant entered BNS's room. Although BNS testified to a fragmented memory, she recalls in "flashes"[2] the appellant in her room, them having a conversation, her realizing that she was lying back instead of sitting, and seeing his face "like he was . . . kind of sitting on top of [her]."[3] She remembered nothing beyond this until she woke up later naked and disoriented.

Upon awakening, BNS located and confronted the appellant, asking him what had happened. He responded by saying he was sorry. BNS then, after talking to her mother, discussed the incident with a friend and fellow Sailor who turned out to be a sexual assault victim's advocate. The friend, concerned about possible testing for sexually transmitted diseases, called the appellant to determine whether he had used a condom. The appellant confirmed they had in fact had unprotected intercourse. BNS was then taken to the emergency room, where blood was drawn to determine BAC and a sexual assault forensic examination was conducted.

The appellant was twice interviewed by the Naval Criminal Investigative Service (NCIS). In the first interview, the appellant admitted to sexual activity with BNS, but contended it was consensual. In the second, he admitted he "was not completely honest"[4] in his first statement. He said he had removed both his and her clothing with no assistance from her and inserted his penis into BNS's vagina and "performed oral sex"[5] on BNS while BNS was "unresponsive" and "did not participate in the sex."[6]

Additional facts necessary for the resolution of this case are included below.

---

[1] Record at 264.

[2] *Id.* at 267.

[3] *Id.*

[4] Prosecution Exhibit 5 at 1.

[5] *Id.*

[6] *Id.*

**Variance**

Because the appellant's first two contentions both purport that a material variance occurred, we consider them together. The appellant asserts a fatal variance occurred because the military judge, while he found the appellant guilty of the specifications as charged without exception or substitution, issued special findings indicating he found him guilty under a different theory of liability. Specifically, both specifications charged sexual assault under Article 120(b)(3), UCMJ: sexual acts upon a person who is incapable of consenting to the sexual acts due to impairment by alcohol. But, the appellant claims, the military judge's special findings indicate he actually found the appellant guilty under a different theory of liability, Article 120(b)(2): sexual acts upon a person who is asleep, unconscious, or otherwise unaware that the sexual acts are occurring. We disagree.

Whether there was a fatal variance is a question of law we review *de novo*. *United States v. Treat*, 73 M.J. 331, 335 (C.A.A.F. 2014); *United States v. Useche*, 70 M.J. 657, 661 (N.M. Ct.Crim.App. 2012). When defense counsel fails to object to a purported variance at trial, we will not grant relief absent plain error. *United States v. Finch*, 64 M.J. 118, 121 (C.A.A.F. 2006). To find plain error, we must find: (1) there was an error; (2) the error was plain, that is, clear or obvious; and, (3) the error affected substantial rights. *Id.*

In this case, there was no variance. The appellant was charged with and convicted of precisely the same conduct with no modification to the specifications: sexually assaulting BNS by inserting his penis and tongue into BNS's vagina when BNS was incapable of consenting due to impairment by alcohol. The military judge in his special findings reiterated that he found beyond a reasonable doubt that all elements of both offenses, as charged, were met, including that BNS was incapable of consenting due to impairment by alcohol and that the appellant knew or reasonably should have known this. The findings regarding impairment by alcohol are amply supported by the record.

In one of his findings of fact, the military judge states that based on the testimony of BNS, the appellant, and the two experts, he was satisfied beyond a reasonable doubt that BNS "transitioned from a fragmentary black-out phase (where she may have appeared somewhat coherent) into a passed-out phase [where she was completely unresponsive] during the initial intercourse

4

with [the appellant] and prior to his inserting his tongue into her vagina and his final insertion of his penis into her vagina."[7] This special finding of fact is not inconsistent with his conclusion that BNS was incapable of consenting due to impairment from alcohol. In such circumstances, a person can be both incapable of consenting due to impairment by alcohol and asleep or unconscious. The fact that proof at trial demonstrates that another theory of liability may also have been available does not imply that a variance has occurred as long as the Government has proven all elements of the offense as charged and convicted beyond a reasonable doubt, which it did.

There being no variance between charged and proven offenses, the appellant's assertion of lack of notice also fails.

## Prior Inconsistent Statement

The appellant next asserts the military judge erred by excluding extrinsic evidence of a prior inconsistent statement by BNS to the sexual assault forensic examiner. We agree.

When testifying to her "little flashes"[8] of memory, BNS stated she remembered the appellant on top of her but not feeling anything: "I just saw his face and I felt so dizzy and just, like my body felt heavy and numb and just, just like the way people feel when they've reached that point they're just completely out of it. I didn't feel his weight."[9] She testified the next thing she remembered was waking up naked and disoriented later that evening. On cross-examination, she conceded that her trial testimony was that she did not remember "anything about the penetration or anything about sex."[10] The defense counsel, proffering that it was for purposes of impeachment by prior inconsistent statement, asked BNS whether she told the sexual assault forensic examiner, Lieutenant Keck, that she remembered feeling penetration of her vagina with the appellant's penis. BNS responded, "I don't remember talking about that with him."[11]

---

[7] Appellate Exhibit XXXVII at 7.

[8] Record at 267.

[9] *Id.*

[10] *Id.* at 317.

[11] *Id.* at 392.

5

During its case-in-chief, the defense called Lieutenant Keck as a witness. When the assistant defense counsel got to the ultimate question of what BNS told him regarding penetration of the vagina, the Government objected on the grounds of hearsay. The assistant defense counsel replied the evidence was being offered not for the truth of the matter asserted, but as impeachment evidence under MILITARY RULE OF EVIDENCE 613(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). The military judge stated he was overruling the Government's objection, but added that what he found to be inconsistent between the two statements was merely whether she discussed vaginal penetration with Lieutenant Keck, not the specifics of what she told him. The military judge ruled, accordingly, that the defense was limited to asking Lieutenant Keck whether BNS discussed the topic of feeling penetration with him and was not permitted to elicit specifics of what BNS told Lieutenant Keck regarding penetration.

Given these limitations, the assistant defense counsel was left with but one question for Lieutenant Keck: "When you were conducting the [sexual assault forensic] exam for [BNS], do you recall discussing penetration of her vagina?"[12] Lieutenant Keck replied with a simple "Yes."[13] The Government declined cross-examination and the witness was excused.

We review a decision to exclude evidence for an abuse of discretion. *United States v. Harrow*, 65 M.J. 190, 199 (C.A.A.F. 2007). For extrinsic evidence of a prior inconsistent statement to be admissible, first, there must be an inconsistency between trial testimony and the previous statement. *United States v. Damatta-Olivera*, 37 M.J. 474, 477 (C.M.A. 1993). While a seemingly obvious requirement, whether there is an inconsistency is not always so clear in practice. A military judge thus has considerable discretion to determine whether an inconsistency exists between a witness's trial testimony and a prior statement. *Harrow*, 65 M.J. at 200. Evasiveness or inability to recall may constitute an inconsistency. "Although an inconsistency is logically essential for this method of impeachment, whether testimony is inconsistent with a prior statement is not limited to diametrically opposed answers but may be found as well in evasive answers, inability to recall, silence, or changes of position." *Damatta-Olivera*, 37 M.J. at 478 (citations omitted).

---

[12] *Id.* at 576.

[13] *Id.*

The second requirement for admissibility of extrinsic evidence of prior inconsistent statements is stated in MIL. R. EVID. 613(b): the witness must be afforded an opportunity to explain or deny the allegedly inconsistent statement and the opposite party must be "afforded an opportunity to interrogate the witness thereon . . . ." If the witness admits making the inconsistent statement, extrinsic evidence is generally not admissible. *Harrow*, 65 M.J. at 199. If, on the other hand, the witness denies making the statement or equivocates, extrinsic evidence may be admitted for the limited purpose of impeachment. *Id.*

We find that the military judge in this case erred by not allowing the defense to elicit the contents of BNS's statement to Lieutenant Keck regarding penetration. First, here, as in *Harrow*, "the military judge appears not to have understood that an inability to recall or a 'non-responsive' answer *may* present an inconsistency for purposes of M.R.E. 613." *Id.* at 200. The inconsistency was not whether BNS had a conversation with Lieutenant Keck regarding penetration. It was whether she perceived penetration of her vagina at the time of the assault; the trial testimony and the proffered statement *were* inconsistent on this point.

Second, the defense counsel properly confronted BNS with this prior statement and gave her an opportunity to explain or rebut it. BNS's denial that she remembered making this statement to Lieutenant Keck was, for MIL. R. EVID. 613 purposes, sufficient to open the door for extrinsic evidence.

Having found error, we now assess whether there was prejudice. This is an error of an evidentiary nature not rising to constitutional dimension; accordingly, we apply a nonconstitutional harmless error analysis. *Id.* We therefore review *de novo* whether the error had a substantial influence on the military judge's verdict in the context of the entire case considering the following factors: (1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question. *Id.* (citing *United States v. Berry*, 61 M.J. 91, 98 (C.A.A.F. 2005)).

We find that the evidence did not have a substantial influence on the military judge's verdict. The Government's case was strong. It included a confession in which the appellant admitted BNS was "unresponsive and did not participate in the sex." This was corroborated by BNS's testimony that she

7

was extremely intoxicated, had fragmentary memory of the events in question and remembered in "little flashes"[14] the appellant coming to her room, kissing her, and lying on top of her while her body felt "heavy and numb."[15]  Further, the testimony of two experts, a forensic toxicologist and a forensic psychiatrist, was highly corroborative of BNS's impairment by alcohol.  The toxicologist established that BNS had a BAC of 0.09 grams per deciliter roughly eight hours after the appellant came to BNS's room and some nine hours after BNS had stopped consuming alcohol.  Thus, the expert was able to conclude, at approximately 1630, the time the military judge ultimately concluded the appellant entered BNS's room, BNS would have had a BAC between 0.21 and 0.25 grams per deciliter.

The defense case, on the other hand, consisted of evidence regarding steps BNS had to navigate when leaving the beach and testimony from friends of the appellant to the effect that BNS was flirting with the appellant on the day in question and did not appear significantly intoxicated to them while at the beach and on the ride back to the barracks.  Relative to the Government's case, this evidence was weak and of limited value.

Regarding the third prong, the evidence in question was material.  Although the defense did not make a separate proffer of Lieutenant Keck's expected testimony, we can assume he would have testified consistently with a Sexual Assault Forensic Examination form he completed.[16]  In it, he checked "Yes" in a block for penetration of vagina by penis and annotated, "Patient remembers feeling penis penetration before passing out."[17]  This, however, must be taken in context with the previous page where he provided a narrative of the "Patient's Description of the Assault."[18]  There, Lieutenant Keck indicated BNS told him she remembered the appellant coming to her room, but not how he got there, she remembered her thoughts getting "fuzzy,"[19] him starting to kiss her and pushing her back onto the bed, and him

---

[14] Record at 267.

[15] *Id.*

[16] The form was marked and attached to the record as Defense Exhibit A for identification but not admitted.

[17] DE A (FID) at 5.

[18] *Id.* at 4.

[19] *Id.*

8

unzipping her sweatshirt. "She remembers feeling 'uncomfortable' and then she thinks she passed out. She does not remember having sex. Patient woke up in bed naked."[20] This is quite consistent with BNS's ultimate testimony.

At any rate, and turning to the final factor, there is little doubt BNS's memory of the events in question was fractured and incomplete. Evidence that BNS previously told Lieutenant Keck that she felt the appellant's penis penetrate her vagina before passing out would have done little to further impugn her credibility or to harm the Government's case. This is particularly so given the appellant's own statement that BNS was initially responsive, but he inserted his penis into her vagina and performed oral sex on her while she was unresponsive "to see if she would respond to [him]" and "in hopes of getting her to participate in the sex."[21]

It also should be noted the military judge did allow some impeachment evidence to come in: while BNS stated she did not recall discussing feeling penetration with Lieutenant Keck, Lieutenant Keck stated definitively they did discuss it. The defense thus had the opportunity to and did argue that Lieutenant Keck's testimony called BNS's credibility into question.

Considering the four factors together, we readily conclude that the error in limiting Lieutenant Keck's testimony did not have a substantial influence on the verdict. Accordingly, we find the error harmless.

### Legal and Factual Sufficiency of Specification 2

In his next assignment of error, the appellant asserts the evidence supporting Specification 2 of the Charge is factually and legally insufficient. Specification 2 alleged that the appellant committed a sexual assault in violation of Article 120(b), UCMJ, by penetrating BNS's vulva with his tongue while BNS was incapable of consenting due to alcohol. The appellant argues the evidence was insufficient regarding one element of this offense: that the appellant penetrated BNS's vulva with his tongue. He states the exclusive evidence of this element consisted of his inculpatory statements that he performed "oral sex" on BNS, which was insufficient to prove beyond a reasonable

---

[20] *Id.*

[21] PE 5 at 1.

9

doubt that he penetrated BNS's vulva with his tongue.  We
disagree.

We review questions of legal and factual sufficiency *de
novo. United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.
2002).  The test for legal sufficiency of the evidence is
"whether, considering the evidence in the light most favorable
to the prosecution, any reasonable fact-finder could have found
all the essential elements beyond a reasonable doubt."  *United
States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing
*United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  The
test for factual sufficiency is whether "after weighing all the
evidence in the record of trial and recognizing that we did not
see or hear the witnesses as did the trial court, this court is
convinced of the appellant's guilt beyond a reasonable doubt."
*United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App.
2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ),
*aff'd*, 64 M.J. 348 (C.A.A.F. 2007).  Beyond a reasonable doubt,
however, does not mean that the evidence must be free from
conflict.  *Id.*

In his first statement to NCIS, the appellant stated he
initially "layed [sic] her [BNS] down on the bed and I entered
her vagina with my penis."[22]  He said that he started to lose his
erection, so he "started to give her oral sex for a couple of
minutes."[23]  He said she "didn't ask for me to go down on her."[24]
After this, he reinserted his penis into her vagina, but
"realized it was pretty much hopeless for me to finish and I
pulled out and sat back on her bed."[25]

In a second interview with NCIS, the appellant admitted he
"was not completely honest" in his first statement and that BNS
was in fact "unresponsive and did not participate in the sex."[26]
He said he took off all of both of their clothes; she did not
assist in removing clothing and did not say anything.  "At this
point I start to wonder if she still is able or wants to have
sex."[27]  The appellant, nonetheless, continued by placing his

---

[22] PE 2 at 2.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] PE 5 at 1.

[27] *Id.*

10

penis into her vagina "and began to have sex with her to see if she would respond" to him.[28]  She did not.  The appellant rolled BNS on top of him and continued to have intercourse with her while she did not participate.  "At this point [BNS] was still not engaging in the sex which was causing me to lose my erection.  I then rolled [BNS] back on her back on [sic] performed oral sex on her in hopes of getting her to participate in the sex.  She does not respond to the oral sex.  After doing this, I then got back on top of [BNS] and inserted my penis into her vagina."[29]

The appellant cites *United States v. Hansen*, 36 M.J. 599 (A.F.C.M.R. 1992) for the proposition that use of the term "oral sex" without more is insufficient to prove penetration of the vulva.  In *Hansen*, the accused was convicted, contrary to his pleas, of committing sodomy with his daughter.  The accused admitted to investigators to having "oral sex" with his daughter, but neither the accused nor the agent was any more specific than that in their description.  His daughter never acknowledged any relevant acts other than vaginal intercourse.  Under these circumstances, our Air Force counterparts found the accused's admission to having had "oral sex" insufficient to establish actual penetration because, "although appellant and the agent may have had the correct mental impression as to the definition of that term, it does not, per se, prove penetration[.]"  *Id*. at 608.

As a panel of this Court stated in *United States v. Green*, 52 M.J. 803 (N.M.Ct.Crim.App. 2000), we might, under similar circumstances, agree.  "'Oral sex' without more, may refer to fellatio or cunnilingus, neither of which the victim in *Hansen* reported in relation to the charged conduct, and the accused in *Hansen* did not indicate which act had occurred in his admissions."  *Id.* at 805.  But in this case, we have more.  The appellant does not just speak of engaging in oral sex with BNS, he speaks of *giving her* oral sex.  Further, he refers to it as "go[ing] down on her."  He explains she was on her back and his purpose was to try to get her to participate in sex with him, in other words, to stimulate her.  Under these circumstances, the only reasonable interpretation is that the appellant is admitting that he performed cunnilingus on BNS; there can be no confusion that he may have been referring to fellatio.

---

[28] *Id.*

[29] *Id.*

Furthermore, although the evidence did not specifically address penetration of the vulva by the tongue per se, a plain, ordinary, common sense reading of the appellant's statements provides circumstantial, if not direct, evidence that there was at least some penetration of the vulva, *however slight*. Art. 120(g)(1)(B), UCMJ. The evidence of Specification 2 of the charge was, accordingly, legally sufficient and we ourselves are convinced beyond a reasonable doubt of the appellant's guilt to this offense.

## Ways of the World

The military judge, upon request by the appellant under RULE FOR COURTS-MARTIAL 918, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), issued eight pages of special findings. In them, he stated that he "considered all legal and competent evidence, the applicable presumptions, the reasonable inferences to be drawn therefrom, and the court resolved all issues of credibility."[30] The military judge then went into significant detail, including 65 special findings of fact, to support his findings of guilty to both specifications under the charge. In the final paragraph the military judge stated the following:

> In so finding the aforementioned facts, the court reviewed the entire record of trial, and also consulted its common sense and the court's knowledge of human nature and the ways of the world. This allowed the court to reconcile [B.N.S.]'s BAC in light of the testimony of other witnesses, as well as the statements of [the appellant]. As such, the court finds, beyond a reasonable doubt, that [B.N.S.] was incapable of consenting due to impairment by alcohol when [the appellant] inserted his tongue into her vagina and then inserted his penis into her vagina.[31]

The appellant now claims, for the first time on appeal, that the military judge's stated use of common sense and knowledge of human nature and the ways of the world deprived him of constitutionally guaranteed due process. We disagree.

Special findings under R.C.M. 918(b) are akin to specific findings under FEDERAL RULE OF CRIMINAL PROCEDURE 23(c). They are "designed to rectify judicial misconceptions regarding: the significance of a particular fact; the application of any

---

[30] AE XXXVII at 1.

[31] *Id.* at 8.

presumption; or the appropriate legal standard." *United States v. Falin*, 43 C.M.R. 702, 704 (A.C.M.R. 1971) (internal citations omitted). As they pertain to a military judge's explanation of the law she has applied, special findings "are to a bench trial as instructions are to a trial before members." *Id.* We review questions of law, such as the substance of instructions, *de novo*, *United States v. Smith*, 50 M.J. 451, 455 (C.A.A.F. 1999). Having applied that standard here, we find no error.

Military judges are presumed to know the law and to follow it absent clear evidence to the contrary. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007). The special findings provide no evidence to the contrary. It has long been recognized that fact-finders may and in fact are expected "to use their common sense in assessing the credibility of testimony as well as other evidence presented at trial." *United States v. Frey*, 73 M.J. 245, 250 (C.A.A.F. 2014). Similarly, "[t]he term 'ways of the world' refers to court members' evaluation of lay testimony, defenses, and witness credibility" and is generally permissible as long as fact-finders do not "substitute their understanding of the 'ways of the world' for evidence or for the military judge's instructions[.]" *Id.*

In context, the military judge's special findings make it clear he appropriately used common sense and knowledge of the "ways of the world" in assessing evidence properly presented at trial — particularly the credibility of witnesses and whether the appellant knew or reasonably should have known of BNS's incapability to consent — as opposed to impermissibly substituting personal knowledge or opinions for evidence presented at trial. His special findings are scrupulously detailed and supported by evidence presented at trial. The evidence admitted regarding BNS's incapability to consent due to intoxication was strong; the military judge did, however, have to reconcile this evidence with statements by the appellant and others at the beach minimizing BNS's apparent intoxication level. In assessing the weight to give these statements, the military judge was entitled to consult his common sense — no less than members would have been.

### Vagueness

The appellant claims Article 120(b) is unconstitutionally vague. We review the constitutionality of a statute *de novo*. *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005). Due process requires a person have fair notice that an act is forbidden and subject to criminal sanctions before he or she can

13

be prosecuted for it. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003). As the Supreme Court has articulated, "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Parker v. Levy*, 417 U.S. 733, 757 (1974) citations and internal quotation marks omitted). Instead, laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Courts look to multiple sources to find fair notice, including "the [Manual for Courts-Martial], federal law, state law, military case law, military custom and usage, and military regulations." *Vaughn*, 58 M.J. at 31 (citations omitted). In assessing a vagueness challenge, "a statute must of necessity be examined in light of the conduct with which the defendant is charged." *Levy*, 417 U.S. at 757 (citation omitted).

The relevant portion of Article 120(b) prohibits a person from committing "a sexual act upon another person when the other person is incapable of consenting to the sexual act due to . . . impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person[.]" The appellant argues the element "incapable of consenting to the sexual act due to impairment by alcohol" is "not sufficiently specific to inform a member of the public as to when it would be illegal to have sex with a person who has been drinking alcohol, because all drinking causes some level of impairment."[32]

We disagree. We first note that the statute does not prohibit committing a sexual act on a person who is *impaired* by alcohol, but on a person who is *incapable of consenting* to the sexual act due to impairment by alcohol —— a more discernible standard. Further, the appellant's argument ignores the inherent notice element of Article 120(b)(3): "and that condition is known or reasonably should be known" by the appellant.

But irrespective of whether a statute could be read to be vague in some other hypothetical case, an appellant has no standing to challenge the facial validity of a statute that clearly applies to his conduct. *United States v. McGuinness*, 35 M.J. 149, 152 (C.M.A. 1992). Thus, examining the statute "in

---

[32] Appellant's Brief of 11 Jun 2014 at 34.

14

light of the conduct with which the defendant is charged," *Levy*, 417 U.S. at 757, we have little hesitation in finding that Article 120(b) clearly prohibited the appellant's conduct: penetrating BNS's vulva with his tongue and penis while she "was unresponsive,"[33] "did not participate in the sex,"[34] and was in a "passed-out phase"[35] of intoxication.  Accordingly, he lacks standing to claim that Article 120(b) is facially void for vagueness.

## Unlawful Command Influence

In his final assignment of error, the appellant asserts the military judge found but did not adequately remediate apparent unlawful command influence (UCI) and consequently asks us to disapprove his dishonorable discharge.

When the issue of UCI is litigated on the record, as here, we review the military judge's findings of fact under a clearly-erroneous standard while we review the "question of command influence flowing from those facts" *de novo.  United States v. Wallace,* 39 M.J. 284, 286 (C.M.A. 1994).  Apparent UCI exists "where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding."  *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).  An appellant has the initial burden to raise "some evidence" of unlawful command influence.  *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999).  The defense must "show facts which, if true, constitute unlawful command influence, and that the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings."  *Id.* (citations omitted).  If the defense meets its burden, the Government must then, beyond a reasonable doubt, either: (1) disprove the predicate facts on which the allegation of UCI is based; or (2) persuade the military judge that the facts do not constitute UCI; or (3) prove at trial that the UCI will not affect the proceedings.  *Id.* at 151.

---

[33] PE 5 at 1.

[34] *Id.*

[35] AE XXXVII at 7.

Here, the appellant specifically avers the military judge, in response to a defense motion to dismiss, "partially denied"[36] the motion, but found that comments made by the President of the United States on 7 May 2013 "constituted apparent [UCI]."[37] The appellant complains that while the military judge indicated he would, as a remedy "to cure the apparent [UCI],"[38] grant liberal *voir dire* of the potential panel members, carefully adhere to the liberal grant mandate, and craft a special instruction for the members, he did not put in place any alternative remedies once the appellant elected trial by military judge alone. Hence, the appellant does not allege error in the initial UCI ruling, only that the military judge erred by not putting alternative remedies into place once the appellant elected trial by military judge alone.[39]

We find that the military judge committed no error. First, the military judge actually ruled that as of the date of the hearing on the motion, there was no apparent UCI. He did, however, indicate in his findings of fact that there *may* have been apparent UCI up until the Secretary of Defense issued a memorandum on 6 August 2013 expressing his and the President's expectations and making "clear that no comments made by them should be interpreted as in any way directed toward influencing either the process or outcome of military courts-martial regarding any offense and that the independent judgment of everyone involved in the military justice process is what is expected from senior leadership."[40] The military judge found that once this was issued there no longer was an appearance of UCI. His concern was in ensuring potential members were aware of this guidance and able to adhere to it.

Subsequent to this ruling, the appellant requested to change his forum election from members with enlisted representation to military judge alone. After a full opportunity for *voir dire*, the appellant did not challenge the military judge and knowingly and voluntarily elected trial by military judge alone. He did not renew his UCI motion nor did he request any alternative remedial measures.

---

[36] Appellant's Brief at 39.

[37] *Id.*

[38] *Id.*

[39] The appellant does not illuminate what alternative remedies applicable to a bench trial the military judge was expected to impose.

[40] AE XXXII at 4.

As stated previously, military judges are presumed to know the law and to follow it, *Erickson*, 65 M.J. at 225, and there is no evidence the military judge failed to do so. Under these circumstances, we are satisfied that an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding. *Lewis*, 63 M.J. at 415.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

Chief Judge MITCHELL and Senior Judge MCFARLANE concur.

For the Court

R.H. TROIDL
Clerk of Court

17