# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Koda M. HARPOLE
### Seaman (E-3), U.S. Coast Guard

### CGCMG 0322
### Docket No. 1420

### 10 November 2016

General Court-Martial convened by Commander, Coast Guard Pacific Area.  Tried at Seattle, Washington and Alameda, California, 9 October, 10 November, and 1-5 December 2014.

| | |
|---|---|
| Military Judge: | CAPT Christine N. Cutter, USCG |
| Trial Counsel: | LT Geralyn M. Van de Krol, USCG |
| Assistant Trial Counsel: | LT Joel C. Coito, USCG |
| Defense Counsel: | LT Tereza Z. Ohley, USCGR |
| Assistant Defense Counsel: | LT Lindsay Geiselman, JAGC, USN |
| Civilian Appellate Defense Counsel: | Mr. James Trieschmann, Esq. |
| Military Appellate Defense Counsel: | LT Philip A. Jones, USCGR |
| | LT Jason W. Roberts, USCGR |
| Appellate Government Counsel: | LT Lars T. Okmark, USCGR |

## BEFORE
## McCLELLAND, SPOLIDORO & JUDGE
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of members, including enlisted members.  Contrary to his pleas, Appellant was found guilty of one specification of false official statements, in violation of Article 107, Uniform Code of Military Justice (UCMJ); two specifications of sexual assault, in violation of Article 120, UCMJ;[1] and one specification of housebreaking, in violation of Article 130, UCMJ.  The military judge sentenced Appellant to

---

[1] Appellant was convicted of two specifications of sexual assault for the same incident, which were both prosecuted in consideration of contingencies of proof.  One of the specifications was dismissed after findings as an unreasonable multiplication of charges.  The dismissal was conditional, hence we consider both specifications.

confinement for seven years, reduction to E-1, and a dishonorable discharge. The Convening Authority approved the sentence.

Before this Court, Appellant has assigned the following errors:

I. The evidence is legally and factually insufficient to support a conviction.

II. Article 120(b)(3), UCMJ, is unconstitutionally vague because the level of impairment that renders a person incapable of consenting is undefined.

III. The military judge erred by refusing to instruct the members as requested on the definition of "incapable".

IV. The military judge abused her discretion when she allowed a victim advocate to testify as to Appellant's privileged communications, in violation of M.R.E. 514.

V. The trial defense counsel were ineffective by failing to suppress SN Harpole's unwarned admissions.

VI. The convening authority selectively ordered prosecution of Appellant in violation of equal protection.

VII. The promulgating order indicates Appellant was convicted under Charge II, Specification 1, but does not reflect the military judge's conditional dismissal of that specification.

VIII. The military judge plainly erred when he instructed members they must find Appellant guilty.[2]

IX. Appellant's due process rights were violated when the Court failed to render him timely appellate review.

In an appendix to the Assignments of Error and Brief (Appellant's Brief), Appellant personally asserts seven issues:

A-I. Victim advocate procedures not properly followed.

A-II. Coast Guard SAPR policies not properly followed.

A-III. Coast Guard Investigative Service policy not properly followed.

A-IV. 10 U.S.C. §1044e not properly followed with procedure.

---

[2] Appellant's motion for leave to file supplemental assignments of error was granted on 13 October 2016, adding this and the next issue.

A-V.   The way I was treated following my report of sexual assault.

A-VI.   The way I was re-victimized numerous times throughout the initial report, court-martial, and ending up in a Naval brig.

A-VII. Miscellaneous issues.

The sexual assault and housebreaking specifications of which Appellant was convicted arose from an incident aboard USCGC POLAR STAR (WAGB-10) involving Appellant and a female petty officer who became the complainant, GR.  According to the evidence at trial, Appellant sought assistance from a Victim Advocate on the ship three days after the incident. (R. at lines 15395-99.)  He reported to the Victim Advocate that he had visited GR's berthing area in the middle of the night after an evening of drinking, that he didn't remember what happened, but he had been sexually abused in the past and knew what it felt like and that's why he was talking to the Victim Advocate.  (R. at lines 15443-58, 15472-79, 15506-08.)  The appendix to Appellant's Brief essentially sets forth Appellant's complaints about the way he was treated following this disclosure and how his treatment fell short of the requirements of law and policy concerning persons who report being the victim of an alleged sex-related offense.

Appellant's complaints in the appendix fall into three categories.  Some of them are part and parcel of Assignments of Error I, IV and VI.  Issue A-VII, "Miscellaneous issues," raises some issues that were addressed at the court-martial; we see no error in the resolution of those issues at trial.  The remainder of the issues, including but not limited to those relating to the Coast Guard Investigative Service (CGIS) and his experience in the brig where he was confined after trial pursuant to his sentence, we view as not relevant to the review this Court is tasked with carrying out under Article 66.

As to Assignment I, we conclude that the evidence is legally sufficient, and we are convinced beyond a reasonable doubt of Appellant's guilt.  We discuss the other assignments, direct correction of the promulgating order, and affirm the findings and sentence.

**Constitutional challenge to Article 120(b)(3)**

Specification 1 of Charge II alleges that Appellant committed a sexual act upon GR when she "was incapable of consenting to the sexual act due to impairment by an intoxicant." This allegation uses the language of Article 120(b)(3), UCMJ. Appellant contends that Article 120(b)(3) is unconstitutionally vague because it "does not define what level of impairment renders a person incapable of consenting." (Appellant's Brief at 12.) He adds, more cogently, "The statute provides no guidance in determining who is 'incapable' of consenting." (*Id.* at 14.)

We reject Appellant's contention. The problem is not that the statute fails to define who is incapable of consenting. A person of ordinary intelligence can understand what is prohibited: sexual conduct with a person who lacks the ability to consent. *United States v. Solis*, __ M.J. __ (N.M.Ct.Crim.App. 11 August 2016). "Incapable of consenting" means lacking the cognitive ability to appreciate the sexual conduct in question or the physical or mental ability to make or communicate a decision about whether they agree to the conduct. *Id.* (citing *United States v. Pease*, 75 M.J. 180 (C.A.A.F. 2016)).[3] What is difficult, given a person under the influence of an intoxicant, is determining whether or not that person is in fact capable of consenting. This is not a defect in the statute but rather a reality of life.

**Requested instruction on "incapable"**

Appellant complains that the military judge refused to give a defense-requested instruction on the definition of "incapable." The requested instruction would pertain to Specification 1 of Charge II, alleging that the alleged victim was incapable of consenting to the sexual act due to impairment by an intoxicant.

The military judge's denial of a requested instruction is reviewed for abuse of discretion. *United States v. Carruthers*, 64 M.J. 340, 345-46 (C.A.A.F. 2007) (citing *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993)). The failure to give a requested instruction is error if the requested instruction is correct and not otherwise substantially included in the

---

[3] The opinions cited do not pronounce complicated legal analyses. What they pronounce is what is already readily understood by a person of ordinary intelligence.

instructions, and is on such a vital point in the case that the failure to give it deprived the accused of a defense or seriously impaired it. *Id.* at 346 (quoting *Damatta-Olivera*, 37 M.J. at 478).

> Appellant's requested instruction was, in pertinent part, as follows:
>
> "Incapable" means a complete and total mental impairment and incapacity due to the consumption of alcohol . . . which rendered the alleged victim completely unable to appraise the nature of the sexual conduct at issue, completely unable to physically communicate unwillingness to engage in the sexual conduct at issue, or otherwise completely unable to communicate competent decisions.

(Appellate Ex. 57 at 1.)  The military judge declined to include the requested instruction.  (R. at lines 17707-10.)

Appellant asserts that the instruction was necessary to eliminate the "vagueness problem" identified in Assignment II.  We have rejected Appellant's contention that there is a vagueness problem.  Appellant also asserts that the requested instruction was correct, not otherwise addressed in the instructions, and essential to his defense.

We disagree that the requested instruction was correct.  In using the terms "complete and total" and "completely," the requested instruction placed a "spin" on the statutory language.  As we previously noted, "incapable of consenting" can be understood by a person of ordinary intelligence; no additional explanation is necessary.  The additional language requested by Appellant would have imposed a changed and confused meaning on the statutory language.  The military judge's refusal to grant Appellant's request may have eliminated a possible defense, but only a defense to which he was not entitled.  The military judge did not abuse her discretion by declining to give the requested instruction.

### Testimony by victim advocate

Appellant contends that the military judge abused her discretion when she allowed a Victim Advocate to testify about Appellant's statements to her, violating Military Rule of Evidence 514 in that the statements were privileged.

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006) (citing *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). Whether a communication is privileged is a mixed question of fact and law. *Id.* Military Rule of Evidence (M.R.E.) 514, Manual for Courts-Martial, United States (2012 ed.) provides a privilege for "a confidential communication made between the victim and a victim advocate, in a case arising under the UCMJ, if such communication was made for the purpose of facilitating advice or supportive assistance to the victim." M.R.E 514(a). "A communication is 'confidential' if made to a victim advocate acting in the capacity of a victim advocate and if not intended to be disclosed to third persons other than: (A) those to whom disclosure is made in furtherance of the rendition of advice or assistance to the victim . . ." M.R.E. 514(b)(3).

Appellant moved before trial to preclude the Victim Advocate from testifying about confidential communications Appellant made to her in her capacity as a Victim Advocate for him. (Appellate Ex. 22.) The military judge made the following findings of fact, among others:

> On 2 March 2014, the accused in this case approached a friend, [SC].  * * *
>
> At [SC's] recommendation, the accused went to [HN], a victim advocate aboard the USCGC POLAR STAR, that evening. The accused asked [SC] to sit in on the interview for support.
>
> . . . the accused told [HN] the following:
> a.   He requested that [SC] remain in the room. He further stated that "he had already told [SC] everything."
> b.  The accused went to the alleged victim's berthing on the night in question to get his bag.
> c.  The last things he remembered from the night in question were knocking on the alleged victim's berthing area door and her answering.
> d.  He knew he had been sexually assaulted on the night in question because he felt the same as he had in the past when he had been sexually assaulted.

(Order Denying Defense Motion to Exclude Statements of the Accused, dated 24 November 2014 (Order dated 24 November 2014) at 1-2.)[4] These findings of fact are supported by evidence and are not clearly erroneous.

---

[4] This order was omitted from the record of trial, but was added to the record by our order of 10 September 2015 granting the Government's Motion to Attach filed 15 July 2015.

The military judge concluded that SC's presence during Appellant's communication to HN rendered the communication non-confidential. (Order dated 24 November 2014 at 7.) HN did testify about the communication at trial. (R. at lines 15398-15508.)

Appellant insists on appeal, as he did at trial, that his friend SC was a person to whom disclosure was made in furtherance of the rendition of assistance. We do not agree. Appellant's argument that SC functioned analogously to the appellant's wife in *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006), where the court held that the wife's presence with the appellant and his pastor did not vitiate his privilege under M.R.E. 503 to keep his statements to his pastor confidential, is unconvincing. In *Shelton*, the court found a relationship by marriage and a commonality of interest between the appellant and his wife, and furthermore, the pastor had advised the appellant that it was important that his wife be present. *Id.*, 64 M.J. at 39. Nothing like these factors is present in our case.

The military judge did not make a finding that Appellant's communication was made to HN in her capacity as a Victim Advocate; such a finding was not necessary to support her conclusion that the communication was non-confidential. Even if we assume that the communication was indeed made to HN in her capacity as a Victim Advocate, we agree with the military judge that the communication was non-confidential; the military judge did not err and did not abuse her discretion in allowing HN's testimony.[5]

### Ineffective assistance of counsel

Appellant asserts that his defense counsel at trial were ineffective in failing to move to suppress Appellant's admissions to the Victim Advocate pursuant to Article 31(b), UCMJ.

The test for resolving an issue of ineffective assistance of counsel was established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and was incorporated into

---

[5] We do not believe the fact that Appellant had already told SC his story when Appellant approached HN would have rendered his statement to HN non-privileged. If we were to find that Appellant's statement to HN in SC's presence were privileged, SC's knowledge that the two stories he had heard were the same would tend to weaken the privilege as a practical matter, unless, beyond all reason, Appellant's earlier statement to SC were accorded the same privileged status.

military law by *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987). *See also United States v. Molina*, 68 M.J. 532 (C.G.Ct.Crim.App. 2009).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland*, 466 U.S. at 687. There is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance, and that the challenged action might have been sound trial strategy *Id.* at 689. If this presumption is rebutted, relief is warranted only if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 695.

At trial, Appellant moved to exclude his statements to Victim Advocate HN on the ground that they were privileged, as already discussed. He did not litigate their admissibility as unwarned statements taken in violation of Article 31, UCMJ.

Concerning the first prong of the *Strickland* test, appellate courts are not to second-guess the strategic or tactical decisions made at trial by defense counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (quoting *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009)); *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993). If there is a reasonable explanation for counsel's actions, the presumption of competence prevails. *Gooch*, 69 M.J. at 362 (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

As noted above, Appellant's counsel did move to suppress HN's testimony on the ground that his statements to HN were confidential communications to her in her capacity as a Victim Advocate. The theory that HN was acting as a Victim Advocate is factually inconsistent with the theory that HN was required to give Appellant his Article 31(b) rights. Consequently, it would have been difficult to attempt to suppress the testimony on both grounds. At best, the argument would have to be that HN initially was acting as a Victim Advocate and at some point in the conversation abandoned that role and became an interrogator. Given this dilemma, defense counsel could reasonably have made the tactical decision to seek to suppress all of the

statements to HN as confidential communications rather than simply seek to suppress some of his statements because HN failed to provide Article 31(b) rights. This is an obvious reasonable explanation for counsel's actions. Accordingly, Appellant has not overcome the presumption of competence of counsel.

As to the second prong of the *Strickland* test, when an issue of ineffective assistance is premised on counsel's failure to move to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been successful. *United States v. Jameson*, 65 M.J. 160, 164 (C.A.A.F. 2007) (quoting *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001)).

Article 31(b), UCMJ, requires that a person suspected of an offense be informed of the nature of the suspected offense, and be advised that he does not have to make a statement and that any statement made may be used as evidence against him. Whether a person is a suspect is an objective question of whether the questioner believed or reasonably should have believed that the person being questioned committed an offense. *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000) (citing *United States v. Good*, 32 M.J. 105, 108 (C.M.A. 1991)). Further, Article 31(b) requires warnings only if the questioner is participating in an official law enforcement or disciplinary investigation or inquiry, which is also an objective question. *Id.* Of course, Article 31 does not apply if there is no interrogation. An interrogation is any questioning in which an incriminating response either is sought or is a reasonable consequence. M.R.E. 305(b)(2).

Given that Appellant did not litigate admissibility of his statements to HN as unwarned statements taken in violation of Article 31, UCMJ, it is not surprising that there is almost no evidence bearing on the critical question of whether there was an interrogation, as well as only limited evidence bearing on the questions of whether Appellant was a suspect and the role of the questioner.

Evidence on the motion to exclude Appellant's statements to HN consisted of an affidavit from HN, an affidavit from Appellant's friend SC, an affidavit from a person later assigned to be

Appellant's Victim Advocate, HN's testimony at the Article 32 investigation, and SC's testimony at the Article 32 investigation.[6]  Further evidence bearing on this issue is the trial testimony of HN and SC.  In all of that evidence, the only evidence bearing on whether there was an interrogation is found in HN's affidavit, where she states, "I asked [Appellant] what was going on."  (Appellate Ex. 22 at 11.)  This was early in the encounter, after HN learned that Appellant wanted to speak with a Victim Advocate, and had ascertained that Appellant wanted SC to remain in the room and Appellant had already told SC what he had to say, but before she had been given any details.

Although there is evidence that at some point in the encounter, HN reasonably should have believed that Appellant might have committed an offense, there is little or no evidence to suggest that at the outset when HN asked the question, "What's going on?" she had reason to suspect him of an offense so as to require Article 31 warnings.  She had been made aware of GR's complaint against Appellant (*id.*), but had no reason to expect that incident to be raised in the course of HN's encounter with Appellant.  Further, there is no reason to believe she was acting in a role other than Victim Advocate when she asked the question.  Thus, on the evidence in the record, there was no evidence of an interrogation and no evidence that Article 31 warnings should have been given.

We note that in the appendix to Appellant's Brief, Appellant asserts that HN did ask him questions beyond the initial question.  He states:

> She asked me what the problem was.  Which I started to tell her my account of the events.  She continually asked me questions, and was what felt to be probing for something that I wasn't saying, which at the time seemed weird because I just wanted her to just listen to what I had to say.  She seemed to have specific questions she wanted to ask.

Appellant's Brief, appendix at 2.  This assertion is not contained in a sworn statement and has not been attached to the record as evidence.  Therefore we do not consider it, and we do not see an issue of fact with respect to the issue of ineffective assistance.

---

[6] As listed in the written motion, the latter two items of evidence are identified as "Article 32 CD Testimony of" the two witnesses.  (Appellate Ex. 22 at 9.)  There is no CD of testimony from the Article 32 investigation in the record of this case.  However, the Article 32 investigation report in the ancillary documents includes summaries of their testimony.  (Report of Article 32 Investigation dtd 2 October 2014, Encl. 2 at 27-29, 35-36.)

Accordingly, Appellant has not shown any probability that a suppression motion would have been successful.

On both prongs of the *Strickland* test, Appellant has failed to show that his defense counsel at trial were ineffective.

## Selective prosecution

Appellant complains that he was selectively prosecuted, in that he and the complainant, GR, "were in the exact same situation, but only he was prosecuted." (Appellant's Brief at 31.) He suggests that the Convening Authority assumed "that if a man and a woman have a drunken tryst, the man must be the aggressor." (*Id.* at 34.) He asserts that "the record contains no other explanation for why the convening authority chose to prosecute the appellant, while protecting [GR] as a victim." (*Id.*)

> To support a claim of selective or vindictive prosecution, an accused has a heavy burden of showing that others similarly situated have not been charged, that he has been singled out for prosecution, and that his selection for prosecution was invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Argo*, 46 M.J. 454, 463 (C.A.A.F. 1997) (quotation marks omitted) (citing *United States v. Garwood*, 20 M.J. 148, 154 (C.M.A. 1985)).

Appellant raised this issue before trial. (Defense Motion for Appropriate Relief dtd 24 November 2014.)[7] The relief sought was dismissal of Charge II and its specifications. The military judge denied the motion to dismiss. (Appellate Ex. 33.) According to relevant parts of the military judge's findings of fact:

11. Coast Guard Investigative Service (CGIS) started a report looking into the sexual assault of the alleged victim [GR] on 28 February 2014. It is unclear as to whether a *separate* investigation was ever started to research the complaint of

---

[7] This motion was omitted from the record of trial, but was added to the record by our order of 10 September 2015 granting the Government's Motion to Attach filed 15 July 2015.

sexual assault made by the accused, as reported to [HN] on or about 2 March 2014.

13. [A CGIS special agent] interviewed the accused [Appellant] on 12 March 2014. He told the accused that he was suspected of rape and went through his Article 31(b) rights with him. The accused invoked his right to remain silent.

14. [The CGIS special agent] speculated that the accused's invocation of his Article 31(b) rights might have been the reason that it was unclear whether a separate investigation into his allegations of sexual assault had been started.

(Appellate Ex. 33 at 3.) These findings of fact were evidently based on the testimony of the CGIS special agent at the Article 32 investigation. They are not clearly erroneous.

As the military judge observed, Appellant's invocation of his Article 31(b) rights "would certainly tend to support the conclusion that further investigation of the accused's claim would be futile. Sexual assault allegations often revolve around the complaining party's story – without a cooperating alleged victim, many a sexual assault case goes uninvestigated."

Given the absence of a statement to CGIS, Appellant's premise, that he and GR "were in the exact same situation," is decidedly false. CGIS, and hence the Coast Guard, did not have what is arguably the first prerequisite of a prosecution of Appellant's alleged assailant: a cooperating alleged victim providing a story to investigators. Even the hearsay information available, via SC's affidavit concerning Appellant's statement to him (Appellate Ex. 22 at 14)[8], that GR "had grabbed his hands and used them to touch herself with," is certainly not "the exact same situation" as that described by GR in her affidavit, found in Defense Motion for Appropriate Relief dtd 24 November 2014, as well as her trial testimony (R. at lines 8335-44, 8360-63), to the effect that she awoke in her rack to find Appellant on top of her having sex with her. The situations of the two individuals in the incident, Appellant and GR, become even more different when evidence bearing on credibility of Appellant's and GR's statements is taken into account.

In short, Appellant and GR were not similarly situated, the record provides a clear reason why GR was not prosecuted (the absence of a complaining witness's statement against GR), and

---

[8] This affidavit is also found in Defense Motion for Appropriate Relief dtd 24 November 2014. See footnote 7 herein.

Appellant's speculation that the Convening Authority must have had an invidious reason for treating Appellant and GR differently does not meet his heavy burden of showing that he was selectively prosecuted in violation of his right to equal protection of the law.

## Promulgating order

Appellant complains that the promulgating order fails to reflect that the military judge "conditionally dismiss[ed] Specification 1 of Charge 2, subject to final review of this case." (R. at lines 20247-49.) The Government concedes the error. We will order a corrected promulgating order. Appellant also complains that the SJAR did not advise the Convening Authority of the conditional dismissal. We are certain this did not prejudice Appellant.

## Member instruction issue

Appellant asserts that the military judge erred by instructing the members, "If based on your consideration of the evidence you are firmly convinced of the truth of each and every element, you *must* find the accused guilty." (Emphasis added.)

We understand this issue is under review by the Court of Appeals for the Armed Forces in *United States v. McClour*, No. 16-0455/AF, and other cases. Until that court decides otherwise, we will follow the logic of its previous holding:

> [A] court-martial panel does not have the right to nullify the lawful instructions of a military judge. . . . Because there is no "right" of jury nullification, the military judge in this case did not err either in declining to give a nullification instruction or in declining otherwise to instruct the members that they had the power to nullify his instructions on matters of law.

*United States v. Hardy*, 46 M.J. 67, 75 (C.A.A.F. 1997). We see no error in the military judge's instruction.

## Post-trial delay

Appellant urges us set aside his convictions on account of unreasonable post-trial delay in our decision.

The case was referred to this Court on 6 April 2015. Appellant asserted the right to a timely appeal on 11 October 2016.

The Court of Appeals for the Armed Forces (CAAF) applies "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial[,] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action[, and] where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The "*Barker* four-factor analysis" comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Appellant does not claim a due process violation with respect to the Convening Authority's action or docketing; those actions took place within the *Moreno*-specified time periods. He invokes *Moreno* with reference to the period from docketing the case with this Court to the date of our decision, claiming a due process violation based on the fact that this decision is being issued after 6 October 2016. Thus, the period exceeded the eighteen-month *Moreno* standard by thirty-four days, which delay is sufficient to raise the presumption under *Moreno*. Accordingly, we will carry out the *Barker* four-factor analysis.

Our decision was delayed thirty-four days beyond the eighteen-month period prescribed by *Moreno*. The trial transcript is 1023 pages long. The appellate course of this case included an extended briefing period: Appellant's brief was submitted 139 days beyond the normal due date, under enlargements granted by this Court (a part of which was due to the absence of two appellate exhibits from the record of trial). The length of the transcript and the briefing period are not extraordinary so as to justify appellate delay. The first and second *Barker* factors weigh in favor of Appellant. As for the third factor, Appellant did not assert the right to timely referral until 11 October 2016; this factor weighs slightly in his favor.

As to the fourth *Barker* factor, *Moreno* identified three sub-factors: oppressive incarceration pending appeal, anxiety and concern, and impairment of ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 139-40. Both the first and third sub-factors depend upon a successful appeal on other issues, which is not present in Appellant's case. Concerning anxiety and concern, to be cognizable, it must be "particularized anxiety and concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. Appellant asserts particularized anxiety and concern in that he is required to register as a sex offender, citing *Moreno*, *id*. However, Appellant was sentenced to seven years of confinement and is presumably still incarcerated, distinguishing his situation from *Moreno*. Thus he has not established prejudice. This factor does not weigh in his favor.

Although "no single factor [is] required to find that post-trial delay constitutes a due process violation," *Moreno*, 63 M.J. at 136, in the absence of prejudice the other factors must be very weighty against the Government to warrant a due process violation finding, the delay being "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 361-62 (C.A.A.F. 2006). The convening authority's action in *Toohey* took place 644 days after the date of sentence, and the Court of Criminal Appeals issued its decision 2,240 days (more than six years) after the date of sentence. *Id.* at 357. By contrast, the delay in our case is far from egregious. In the absence of prejudice, we find no due process violation. In any event, if there is a due process violation, it is harmless beyond a reasonable doubt. *See United States v. Allende*, 66 M.J. 142, 145 (C.A.A.F. 2008).

No relief is granted on account of post-trial delay.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as

approved below, are affirmed.  A new promulgating order shall be issued correctly rendering the findings.

Judges SPOLIDORO and JUDGE concur.



For the Court,


Sarah P. Valdes
Clerk of the Court